## LEE COUSINS and W. H. HANN, Appellants, v. J. P. BOWLING, Respondent.

### St. Louis Court of Appeals, April 14, 1903.

1. **Sale: DELIVERY AT A CERTAIN DAY, WHETHER REASONABLE QUESTION FOR THE JURY.** In the case of a non-mercantile contract for sale of hogs to be delivered on a certain day, whether an offer at 8:30 p. m. to receive them was made at a reasonable hour, and at a time when it was reasonable that they could be safely driven from one pen to another to be weighed, is, in the absence of custom, a question for the jury.

2. ———: **DELIVERY, WHAT AMOUNTS TO A RELEASE THEREFROM.** One who has contracted to sell hogs to be delivered on a certain day is released from obligation to deliver or tender delivery, the purchaser having theretofore told him, because he would not deliver them before that time, that he would not receive them on that day, or at any other time, and sent him word to go to h— with his hogs.

3. ———: ———: **ABANDONMENT OF CONTRACT, FOR THE JURY.** While the overwhelming weight of the evidence is that plaintiffs by the acts, language and conduct of Cousins gave defendant to understand that they had abandoned the contract and would not receive the hogs, yet as this case must be tried again, the question of abandonment should be submitted to the jury.

4. ———: **ESTOPPED FROM DENYING ALLEGATION IN PETITION.** Allegation in the petition that both plaintiffs entered into the contract, estopped them from denying it.

5. ———: **EARNEST MONEY: FORFEIT.** Statement in a memorandum of a contract of sale that money given the seller was a payment, is binding, and it can not be shown that it was given as a forfeit.

Appeal from Howell Circuit Court.—*Hon. Wm. N. Evans,* Judge.

REVERSED AND REMANDED.

*Livingston & Burroughs* for appellants.

(1) A day in law embraces twenty-four hours, and each party had that time in which to perform, or offer to perform, his contract. 1 Parsons on Contracts (5 Ed.), sec. 532; Beach, Mod. Law of Contracts, sec. 306; Lariman v. Hornbaker, 21 Ind. 430; Tiernan v. Napier, 5 Yerg. 410; Aldrich v. Albee, 1 Grenl. 120; Savary v. Goe, 3 Wash. C. C. 140; Startup v. McDonald, 6 Man. and G. 593. (2) If respondent had done an act equivalent to a breach of the contract, the appellants were not required to go further in an effort to perform. Mfg. Co. v. McCord, 65 Mo. App. 507; Gabriel v. Brick Co., 57 Mo. App. 520; Smith v. Keith & Perry Coal Co., 36 Mo. App. 567. (3) By virtue of the contract, which in this case was the verbal understanding between the parties, it was the undoubted intention that delivery at any time about the 26th was to be deemed a compliance. Time is not of the essence of the contract. Melton v. Smith, 65 Mo. 315; St. Louis Steam Heating and Ventilating Co. v. Bissell, 41 Mo. App. 426. (4) If the $25 advanced on contract was earnest money, then the property in the hogs was vested in appellants and there could in no event be a forfeiture of the earnest. It is settled that giving in earnest transfers the title to the property absolutely. Tiedeman on Sales, sec. 71.

*Short & Humphries, C. E. Elmore* and *H. D. Green* for respondent.

(1) He was not required to tender said hogs to appellants after such notice; but he had the right to treat the hogs as his own property. Tiedeman on Sales, sec. 333; Black River Lumber Company v. Warner, 93 Mo. 388; Ozark Lumber Company v. Chicago Lumber Company, 51 Mo. App. 555. (2) There was not sufficient time before midnight, after demand made on respondent for the delivery of the hogs, to have assorted, weighed and classed said hogs, even if appellants were allowed until midnight of the 26th to receive them.

Tiedeman on Sales, sec. 99; 2 Addison on Contracts (8 Ed.), bottom paging, 462 and 463. (3) Time was of the essence of the contract by its own terms. It was competent for the parties to so provide. Glass v. Rowe, 103 Mo. 538. (4) It was necessary that appellants should be at the place of delivery at a convenient time before sunset on October 26th, so that delivery could be made. Tiedeman on Sales, sec. 99; 2 Addison on Contracts (8 Ed.), bottom paging, 463; 21 Am. and Eng. Ency. Law (1 Ed.), 536. (5) Appellants are not now in a position to raise the question that the payment of $25 vested the property in said hogs in them; to render tenable this position, they should have replevined the hogs; but having elected to bring an action for damages, thereby waiving their right to claim the property in the hogs, they are bound by the positions they assume. Green v. St. Louis, 106 Mo. 454; Bigelow on Estoppel (3 Ed.), sec. 470.

BLAND, P. J.—The suit originated in a justice's court in Oregon county. It was appealed to the Oregon Circuit Court, from which it was taken by change of venue to the Howell Circuit Court, where a trial was had resulting in a judgment for defendant, from which the plaintiffs appealed.

The substantive averments of the petition are, that in the month of October, 1901, plaintiffs entered into a contract with defendant for the purchase and delivery of one hundred and sixty-six head of hogs, to be delivered at Koshkonong, Missouri, on October 26, 1901, at a price agreed upon; that they paid defendant $25 earnest money on the purchase; that a memorandum in writing of the contract was signed by both parties; that defendant failed and refused to deliver the hogs, whereby plaintiffs were damaged in the sum of $105, for which, with the $25 paid on the purchase price, they ask judgment.

The answer was a general denial.

The memorandum contract referred to in the petition is as follows:

"$25 paid on 65 to 100 at $3.50; 100 up, at $4 per hundred. All to be well. Delivered at Koshkonong, Saturday 26th. Dock on bad piggy sows.

"W. H. HANN.
"J. P. BOWLING."

Defendant contracted with one Erwin for 105 head of the hogs. His son had 66 head that defendant intended and had arranged with his son to put in on the contract. The Erwin hogs were driven to Koshkonong on October 25th, and put in the railroad stock pens, with the understanding between defendant and Erwin that they would be weighed up and turned over to defendant by Erwin on the following morning. The son's hogs were brought in on the 26th. Cousins, one of the plaintiffs, was at Koshkonong on the 25th, saw the Erwin hogs and wanted them delivered on that day. Defendant declined to deliver at that time, telling Cousins that they were not yet his hogs, that they would be weighed up and delivered to him the next morning; that all the hogs that he was to deliver on the contract were not yet in, and he would weigh up and deliver all of them the next day.

Defendant's evidence is, and he is corroborated by other witnesses, that Cousins told him if he did not deliver the hogs then and there that his (Cousin's) money would never pay for them.

On the following day, October 26th, the day the hogs were to be delivered, Cousins and Hann arrived in Koshkonong at 5:30 p. m. They testified they were unable to see or locate the defendant until about 8:30 p. m., and after he had retired for the night. When they found him they asked him to have the hogs weighed up that night. He declined to do this on the ground that it was not businesslike, and that it was too late. They then asked him if he would weigh them up the following morning, which would be Sunday. Defend-

ant replied that he would not do business on Sunday. They then asked him if he would weigh them up on Monday morning. He said he would if plaintiffs would pay the expense of keeping the hogs over until that time. They refused to do this. Some hot words passed and plaintiffs attached the hogs. After Cousins demanded that the hogs be weighed up on the 25th, he left Koshkonong and went to Thayer and from there sent word to the defendant, "to go to hell with his hogs." Defendant then ordered a car with the intention of shipping the hogs on his own account.

Plaintiffs testified that they paid the defendant the $25 as part of the purchase price of the hogs.

The defendant testified that he refused to sign the memorandum contract unless Hann would put up $50 as a forfeit; that they finally agreed on $25 as a forfeit, and that the same was given to him as a forfeit and not as payment on the hogs.

The plaintiffs asked the following instruction, which the court refused to give:

"4. The jury is instructed that a day in law embraces the time from midnight to midnight, and that plaintiffs had from 12 o'clock on the night of the 25th to 12 o'clock on the night of the 26th in which to comply with their contract of receiving and paying for the hogs in question."

The evidence is that the moon was shining on the night of the 26th, but that the hogs would have to be driven from the pen where they were to another, to be weighed. Under ordinary conditions a party, bound by a contract to deliver a thing on a particular day, has until midnight of that day to make the delivery or offer of delivery. Startup v. McDonald, 6 Mann. & Gr. 591. In this case, at page 622, it is said: "The general rule, I conceive, is, that wherever, in cases not governed by particular customs of trade, the parties oblige themselves to the performance of duties within a certain number of days, they have until the last minute of the

last day, to perform their obligation. The only qualification, that I am aware of, to this rule is, that in acts requiring time in order that they may be completely performed, the party must, at all events, tender to do the act, at such a period before the end of the last day, as, if the tender be accepted, will leave him sufficient time to complete his performance before the end of that day. In the case of a mercantile contract, however, the opposite party is not bound to wait for such tender of performance beyond the usual hours of mercantile business.'' If something is to be done with the thing to be delivered before it can be delivered, as that it shall be weighed, then the tender should be made at such an hour of the day as will afford time and opportunity to weigh it. The tender must be made in a reasonable time. Beach on Modern Law of Contracts, sec. 206; Tiedeman on Sales, sec. 99.

The contract for the delivery of the hogs was not a mercantile contract. There was no evidence of any particular trade custom prevailing at Koshkonong, and we think that it was a question for the jury to say whether or not plaintiffs offered to receive the hogs at a reasonable or unreasonable hour and at a time of day when it was reasonable that they could be safely driven from one pen to another to be weighed, and that the instruction was broader than the evidence warranted and was therefore properly refused.

The court gave the following instruction for the defendant, the giving of which is assigned as error:

''2. You are further instructed that if you find from the evidence in this case that the defendant, on the 26th day of October, 1901, ordered a car or made arrangements to have a car sent down for the purpose of shipping said hogs to market, or that the defendant refused to deliver the hogs at a time when he was under no obligation to deliver them, this would not dispense with the necessity of the plaintiffs attending at the time and place agreed upon for receiving said hogs.''

This instruction should be considered in connection with No. 4, given for defendant, which is as follows:

"4. You are further instructed that if you find from the facts and circumstances in this case that the plaintiffs, or either of them, notified the defendant before the day of delivery of said hogs, or upon the day of delivery of said hogs, that they would not take said hogs, then, in that event, the defendant had a right to treat said contract of delivery as abandoned on the part of the plaintiffs, and an offer on the part of the plaintiffs to take the hogs after said notice would not be binding on the defendant."

1. If the plaintiffs had done an act equivalent to a breach of the contract, the defendant was not required to go further in an effort to perform it on his part. Mumford v. Keet, 65 Mo. App. 502; Gabriel v. Brick Co., 57 Mo. App. 520; Smith v. Coal Co., 36 Mo. App. 567.

The evidence in the case shows that prior to ordering the car, to-wit, on the 25th, Cousins told defendant, in substance, that plaintiffs would not receive the hogs on the following day or at any other time and that he had also sent word to defendant "to go to hell with his hogs." The ordering of the car was doubtless prompted by this conduct of Cousins. But, after all this took place, the evidence shows that defendant offered to hold the hogs until the following Monday morning and then weigh and deliver them to plaintiffs if they would pay for their keep. Under this state of facts, we do not think that the mere ordering of the car for the purpose of shipping the hogs, shows an intention on the part of defendant to irrevocably rescind the contract, but shows that he acted on the assumption that plaintiffs had abandoned the contract. In this view of the evidence, the instruction considered along with No. 4, given, though objectionable was not so erroneous as to warrant a reversal of the judgment.

2. It is contended by plaintiff that Cousins had

no right to waive performance of the contract; that the contract was made by Hann, and not by Hann and Cousins. The petition alleges that both Hann and Cousins entered into the contract. This is a solemn admission of record, and plaintiffs are precluded by this allegation and are estopped to deny what they have alleged to be true. McAdow v. Miltenberger, 75 Mo. App. 346; Cole County v. Madden, 91 Mo. 585; Knoop v. Kelsey, 102 Mo. 291.

3. The fifth instruction given for defendant told the jury, in substance, that plaintiffs were bound to be present during business hours on the twenty-sixth of October to receive the hogs. We discussed this feature of the contract in the first paragraph of this opinion. From what is there said this instruction is erroneous, but we do not think the error is one which should work a reversal of the judgment. The overwhelming weight of the evidence is that plaintiffs, by the acts, conduct and language of Cousins, on the 25th, clearly gave defendant to understand that plaintiffs had abandoned the contract and that they would not receive the hogs. Under these circumstances the defendant was released from all obligation whatever to deliver or to tender delivery to the plaintiffs. Gabriel v. Brick Co., supra; Trammell v. Vaughan, 158 Mo. l. c. 226.

In respect to the $25, Hann testified that it was intended as a payment upon the purchase price of the hogs; if so, plaintiffs were entitled to recover it. On the other hand, defendant testified that it was not received as part payment, but as a forfeit. The memorandum of the contract states that it was a payment; defendant is bound by this statement, and the plaintiffs are clearly entitled to recover the $25.

On a retrial of the cause, we suggest that whether or not defendant had a right, under the evidence, to treat the contract as abandoned by the plaintiffs, on or before he was requested on the twenty-sixth to deliver the hogs, be left to the jury under appropriate instruc-

tion; and also whether or not the plaintiffs presented themselves on the twenty-sixth at a reasonable hour of the day to receive the hogs, be left to the jury under appropriate instructions.

The judgment is reversed and the cause remanded. All concur.