HARRISON P. GRIER, Respondent, v. JEFFERSON D. STROTHER, Appellant.

**St. Louis Court of Appeals, December 30, 1910.**

1. **PARTNERSHIP: Dissolution: Liability of Outgoing Partner.** An outgoing partner, on dissolution of the firm, is not liable for the subsequent obligations of the continuing partner, after due notice has been given of the dissolution and of the partner's retirement.

2. ——: ——: ——: **Conversion of Property of Firm.** A partnership, consisting of three partners, Grier, Strother and Shepard, was dissolved by the withdrawal of Strother. After the dissolution, Strother, the withdrawing partner, took several yoke of oxen belonging to the partnership, and after using them a few days, returned all but one animal to Shepard, who seemed to be the controlling spirit in the partnership. The animal which was not returned had suffered a broken leg and died. In an action for an accounting of partnership matters, brought against Strother by Grier, *held,* that Strother was not chargeable to plaintiff as for a conversion of all the cattle so taken, but was only bound to account to him for his one-third interest in the animal that died.

3. ——: ——: ——: ——. A retiring member converting to his own use certain of the firm's property is liable to account for the interest of his partners therein.

4. ——: **Action for Accounting: Parties.** After the dissolution of a partnership, consisting of plaintiff, defendant and Shepard, the latter was discharged in bankruptcy. Plaintiff sued defendant and Shepard for an accounting, but the suit was dismissed as to the latter, because of his bankruptcy. No point was made by plaintiff or defendant as to the propriety of the accounting being had when only two of the partners were before the court, but instead both parties insisted that their rights should be determined as between themselves. The trustee of Shepard made no claim to any right arising out of the partnership, and

Grier v. Strother.

any possible litigation that might arise concerning the accounts of the firm, not included in the controversy between plaintiff and defendant, was barred by limitation. *Held*, that, though all the partners are, in general, necessary parties to a suit for an accounting, the joinder of Shepard, or his trustee, was not essential, under the circumstances, to a determination of the rights of plaintiff and defendant.

5. ———: ———: **Trusts: Resulting Trusts.** A partnership, composed of Grier, Strother and Shepard, engaged in the business of operating a sawmill, desired to purchase a tract of timber land for one thousand dollars. The firm had no money and Grier was unable to contribute his share of the purchase price, and Strother and Shepard paid for the land and took a deed for themselves. The timber was sold by the partnership, after which the land was sold by Strother and Shepard for sixteen hundred dollars. In an action for an accounting brought by Grier against Strother, *held*, that, while defendant and Shepard were trustees of the title for the firm, the firm was only entitled to share in the profits of the sale, to-wit, six hundred dollars, and hence plaintiff's interest in that transaction was one-third of that sum.

6. ———: ———: **Joint Obligation: Set-Off.** After dissolution of a firm, consisting of plaintiff, defendant, and Shepard, the latter became a bankrupt, and in a suit between plaintiff and defendant for an accounting, his rights were stipulated out of the case. *Held*, that, under such circumstances, plaintiff was not chargeable with two-thirds of the value of firm property converted by him, on the theory that the rights of Shepard inured to defendant, in trust for the account of Shepard, under section 1870, Revised Statutes 1909, providing that in all actions brought against one or more joint obligors or promisors, any debt or demand due from plaintiff to defendant in the action, or to all the obligors or promisors in the contract sued on, may be set off against the demand of plaintiff, but plaintiff was only chargeable with defendant's one-third interest in such property, since to apply the statute to this case, plaintiff would be required to respond for Shepard's interest in the property converted, when he and his rights were stipulated out of the case and the other matters involved in the accounting were considered on that basis.

7. ———: ———: **Set-Off: Indebtedness to Firm Against Individual Liability of Partner.** Plaintiff, defendant and one, Shepard, were engaged in operating a mill as partners. Plaintiff sued defendant for an accounting, the suit being brought in part on the theory that he was responsible as the remaining solvent member of the firm of Shepard and Company, which became indebted to the bill partnership on account of its agency for the latter. Plaintiff was indebted to Shepard and Company in

an amount greater than the latter's indebtedness to the mill partnership. *Held*, that equity required that defendant should receive credit at least to the extent plaintiff was indebted to . Shepard and Company, but that he was not entitled to use the balance of plaintiff's indebtedness to that firm as an offset against defendant's personal liability to plaintiff, as an individual member of the mill company, under the rule that an account due a partnership cannot be offset against the debt of an individual member, and this notwithstanding defendant on selling his interest in both firms to Shepard reserved the individual account of plaintiff.

8.  ————: **Dissolution of Partnership: Bankruptcy of Partner: Right of Partnership to Collect Debts.** While, by the bankruptcy of a partner, his share passes to his trustee in equity, the partnership continued *inter se*, to the extent at least of permitting it to collect outstanding debts.

9.  **SET-OFF: Partnership: Partnership Debt Against Individual Liability.** An accounting due a partnership can not be set off against the debt of one of the partners.

10. **ESTOPPEL: Partnership: Action for Accounting: Position Taken in Pleadings.** Where, in a suit for an accounting between two of the partners of a firm, plaintiff both in his bill and in his proof insisted that defendant have credit on the account as finally stated for the total amount of plaintiff's indebtedness to another firm, of which defendant was a member, it was error for the court to refuse to give defendant the benefit of such credit, though he was not otherwise entitled thereto.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED (*with directions*).

*C. G. Shepard* and *Faris & Oliver* for appellant.

(1)  Respondent having, by solemn admission in his petition, admitted that appellant was entitled to credit for the item of $1477.69, is bound by said admission, and is estopped from denying its correctness. Harrison v. McReynolds, 183 Mo. 533; Cousins v. Bowling, 100 Mo. App. 452; Cross v. Railroad, 71 Mo. App. 585. (2)  Respondent was seeking to hold appellant responsible for all C. G. Shepard & Co. had received from the

Mill Company, and hence appellant was entitled to credit for the full amount respondent was indebted to C. G. Shepard & Co., sec. 4491, R. S. 1899; Skirker v. Smith, 48 Mo. App. 91; Mortland v. Holton, 44 Mo. 58; In re Excelsior Mfg. Co., 164 Mo. 316.

*W. W. Corbett* for respondent.

(1) As partners of Mr. Grier, the other partners do not stand towards him, and occupy the same relation to him that they would to an ordinary individual. They are agents, one for the other, and notwithstanding they may have had a settlement with reference to some of the partnership affairs, and a dissolution, still the partnership continues, until the whole relations of the partnership affairs are adjusted. Bender v. Markle, 37 Mo. App. 230; Filburn v. Ives, 92 Mo. 388. (2) They must deal fairly with their partner, they must, as his agent, tell him everything concerning the partnership affairs. Nothing short of a complete disclosure of facts known to either partner, of which the other is ignorant, will exonerate the partner knowing them, from the charge of undue and fraudulent concealment. Story's Eq. Jur., secs. 204, 205, 207, 213, 216, 220; Martin v. Lutkwitte, 50 Mo. 58. (3) Strother could not sell his interest in the partnership of which Mr. Grier was a member, and vary the business of the partnership, without Mr. Grier's consent. Tutt v. Cloney, 62 Mo. 116; Pomeroy v. Benton, 57 Mo. 53. (4) The evidence shows that the one hundred and sixty acres of land named in the bill was paid for with the partnership money, even the sixty dollars interest on the note given for the land was paid for by the mill company, and land for partnership purposes is to be treated as personalty. Thompson v. Holden, 117 Mo. 118. (5) Shepard and Strother could not use the funds of the partnership for their private enterprises. Brown v. Shackleford, 53 Mo. 118; Pomeroy v. Benton, 57 Mo. 53.

NORTONI, J.—This is a suit in equity for an accounting. Plaintiff sues the defendant, who, besides being his partner in a mill company, was also formerly a partner in the firm of C. G. Shepard & Company, which acted as agent for the mill company, and seeks an accounting with respect to a number of items set forth in his bill.

The court referred the matter to a member of the bar who heard the evidence, found the major portion of the issues for defendant and recommended a judgment for several hundred dollars in favor of him against plaintiff. On exceptions filed to this report, however, the trial court sustained the same and upon reviewing the matter, decreed an accounting in favor of plaintiff for several hundred dollars and from this judgment defendant prosecutes the appeal.

It appears in May, 1893, plaintiff Grier, defendant Strother, and one, C. G. Shepard, formed a co-partnership for the purpose of conducting a saw mill business in Pemiscot county. Plaintiff Grier was possessed of no means but was experienced in the saw mill business. By the partnership agreement, Shepard and Strother furnished the mill at an expenditure of about $3000 and plaintiff became associated with them therein as an equal partner by a contribution of his experience and labor. This partnership was known and is called The Mill Company by way of distinguishing it from C. G. Shepard & Company, a co-partnership, which was then engaged in conducting a general merchandise business at the town of Caruthersville, in the same county. At the time The Mill Company was formed through the association of plaintiff Grier and defendants Strother and Shepard, defendants Strother and Shepard were engaged in conducting a general store at Caruthersville as a co-partnership under the firm name of C. G. Shepard & Company. From the institution of the partnership, known as The Mill Company, the mercantile

firm of C. G. Shepard & Company acted as agent, or in all things conducted the business matters of The Mill Company. It appears that C. G. Shepard & Company sold all the lumber manufactured by the mill, collected the moneys therefor, etc. C. G. Shepard & Company also paid the bills of The Mill Company and charged them to that partnership. When anything was needed for The Mill Company, C. G. Shepard & Company would purchase the same and charge it on its books to The Mill Company. The only books which were kept pertaining to the business of The Mill Company were those kept by the C. G. Shepard Mercantile Company at Caruthersville. The co-partnership of C. G. Shepard, J. D. Strother and plaintiff Grier, known as The Mill Company, continued to exist until August 21, 1899, at which time defendant J. D. Strother retired therefrom by selling his one-third interest therein to Charles G. Shepard. The mercantile firm of C. G. Shepard & Company was dissolved the same day through defendant J. D. Strother's retirement therefrom, he having sold to C. G. Shepard his one-half interest in everything pertaining to that business, except the individual account of $1477.69 of plaintiff Harrison P. Grier, which continued as before by agreement of the parties until The Mill Company's affairs should be finally settled. Though the partnership operating the mill was dissolved, as suggested, on August 21, 1899, the mill itself was not operated after May of that year. It appears at the time the mill suspended operation there was a large amount of lumber in the mill yards which was subsequently disposed of by C. G. Shepard & Company after the dissolution of that firm by the retirement of defendant Strother, for though Strother retired August 21, C. G. Shepard continued in business for several years thereafter under the original firm name of C. G. Shepard & Company. Some two or three years after defendant Strother retired from both of these firms, Charles G. Shepard was declared a bankrupt by an adjudication of the

United States District Court for the Eastern District of Missouri, and The Mill Company's affairs remaining unsettled, plaintiff Grier several years thereafter instituted this suit against defendant Strother who was one of his former partners in the saw mill as well as the former partner of C. G. Shepard, the bankrupt, for an accounting in part as to the agency of C. G. Shepard & Company and in part as to matters pertaining to The Mill Company.

The record is voluminous and the testimony as to some of the items in dispute is most obscure. In view of this, we will not attempt to set forth all of the proof as made and the various theories advanced by the parties, but will review only such portions thereof as are material. Several items of the account relied upon may be disposed of in short order, for the evidence touching the matters involved gives rise to no question of doubt. For instance, numerous items with which it is sought to charge defendant Strother as the solvent partner of C. G. Shepard & Company, in view of the bankruptcy of C. G. Shepard, may not be allowed to plaintiff on any theory for the reason that the obligation of C. G. Shepard & Company, with respect to them accrued after defendant Strother had retired from that partnership and after due notice of that fact had been given to all concerned. It will be remembered that after the retirement of defendant Strother, C. G. Shepard conducted the mercantile business under the firm name as before, but Strother was not responsible for the obligations of Shepard, contracted under that name after notice to plaintiff Grier of the dissolution, which was conceded. On this theory, both the trial court and the referee found plaintiff was not entitled to recover against defendant Strother on several items in the bill. Both the court and referee found plaintiff was not entitled to recover on account of a calculated statement in his bill of amounts due plaintiff for one-third interest in certain credits shown by the books Septem-

ber 27, 1899 because said amounts, $153.66 in all, were received by C. G. Shepard & Company, of which defendent Strother was formerly a member, after that partnership was dissolved. Both the court and the referee found plaintiff was not entitled to recover on his item $1575.05 and two-thirds for lumber sold by Shepard during the months of November and December, 1899, and January, 1900, because said lumber was sold by C. G. Shepard after the dissolution of the firm of C. G. Shepard & Company, of which defendant Strother was theretofore a member. Both the court and the referee agreed plaintiff was not entitled to recover on account of his item of $83.33, one-third interest in a saw cab and fixtures, sold to one, Mitchell, because such sale was made by C. G. Shepard after the dissolution of the firm of C. G. Shepard & Company, of which defendant Strother was not then a member. Both the court and the referee found that plaintiff was not entitled to recover on his item of $41.66 and two-thirds, representing one-third interest in a steam boiler sold to Smyth & Harvey, because such sale was made by C. G. Shepard after the dissolution of the firm of Shepard & Company. In respect of these items, the evidence appears to be conclusive that they were disposed of by Shepard after the dissolution of the firm of C. G. Shepard & Company. Such being the fact, of course the present defendant Strother is not to be charged as the solvent member of the former firm of C. G. Shepard & Company, for he received no benefit whatever from such sales. The finding of the court and the referee as to these items is approved. If anyone is to respond to plaintiff for his one-third interest as to these matters, it should be C. G. Shepard, but by his subsequent bankruptcy, he, of course, is discharged. However, there is no principle of either law or equity on which defendant Strother may be required to respond with respect to benefits received by C. G. Shepard & Company after the retirement of defendant and due notice to plaintiff.

Though the referee found plaintiff was entitled to recover on his item of fifty dollars, representing one-third interest in the steam engine said to have been appropriated by defendant Strother, the court found otherwise on reviewing the matter, for it appeared defendant Strother did not appropriate the engine. He did no more than to use it a few days. It does not appear that he sold it or permanently appropriated it to his own use. The finding of the court as to this matter is approved.

After the partnerships were dissolved, defendant Strother took several yoke of oxen, which were owned by The Mill Company, and used them a few days but returned all but one animal to Shepard, who seemed to be the controlling spirit in the mill partnership. While the cattle were in possession of defendant, one of them suffered a broken leg and died. Plaintiff sues for one-third interest in all, but the evidence is conclusive that Shepard and not this defendant disposed of the cattle some time after the dissolution of the partnerships and, in this view, the referee allowed plaintiff $33.33 only, representing his one-third interest in the ox which died while in defendant's possession. On reviewing this matter, the trial court allowed plaintiff $16.66 as his interest in the same ox. We believe the judgment of the trial court should be approved as to this, for it appears that such was about one-third the value of the animal for which defendant should account to plaintiff.

It appears in the fall, after the dissolution of the partnerships and the work at the mill had been shut down, defendant took several head of old mules, which belonged to The Mill Company, and appropriated them to his own use. Both the court and the referee found such to be the fact and charged him with $183.33 as the amount he should respond to plaintiff for his one-third interest therein. This item should be approved as well, for it is amply supported by the testimony. The same may be said with respect to plaintiff's claim as

to one log wagon and certain chains which defendant appropriated to his own use under like circumstances. The court and referee both found defendant should answer for plaintiff's one-third interest as to these matters in the amount of $66.66. Defendant also appropriated to his own use three and one-half sets of harness valued at $52. Both the court and referee found this fact and that plaintiff's one-third interest therein was $17.83. The testimony amply supports the charge and it appears to be just. Defendant appropriated to his own use one gang-edgar, a pump, etc., after the partnerships were dissolved and the mill was suspended. Both the court and the referee found this fact and that plaintiff's one-third interest therein was $66.66. On the testimony, the conclusion seems to be just and should be approved. The same may be said with respect to an item of five dollars, which represents plaintiff's one-third interest in a log turner appropriated by defendant. While the mill partnership was a going concern, it appears defendant hauled away from the mill certain lumber and used it in a residence and a gin property. For this the referee charged him $100 but the court fixed plaintiff's one-third interest therein at $58.33. We believe the charge of $100 as made by the referee is sustained by the testimony and therefore allow the item as $100.

It appears that all of these items, aggregating $456.14 represent property of The Mill Company, consisting of plaintiff Grier, C. G. Shepard and defendant Strother, which was appropriated to his own use by defendant Strother. In view of this, of course, the obligation of Strother is to account to his two co-partners in that firm for their two-third interest and Shepard, or rather his trustee, who succeeded to his interest by virtue of his subsequent bankruptcy, should have been a party to the suit to the end of concluding the whole matter by one judgment, for the law is averse to permitting a situation to arise where a subsequent litigation

may ensue about the same subject-matter. Shepard was originally a party defendant to the present bill but in view of his bankruptcy, the suit was dismissed as to him and the cause proceeded by consent of all as though he or his trustee in bankruptcy were wholly. unconcerned. No point has been made by the parties as to the propriety of the accounting when only two of the partners are before the court, but instead, both insist that their rights shall be determined on the record as made. The bankruptcy of Shepard has long since been settled. It seems his trustee made no claim to any rights in respect of this mill partnership and if he had, no doubt, the amount Shepard owed The Mill Company would offset any claim in favor of the bankruptcy estate and plaintiff has asserted no claim against that estate for anything that Shepard should have contributed to him. The Statute of Limitations has interposed its bar to any possible litigation that may arise in future as to any of the matters pertaining to the accounts of The Mill Company not included in the controversy between the parties to the present record. Shepard himself, who is a member of the bar, is attorney for his former partner, defendant Strother and all insist the court shall determine the rights of the two parties, plaintiff and defendant, alone. In view of these facts, we will consider the case on the theory it was tried and dispose of the matters involved in accord with the equities which lie between the two solvent partners who appear to have mutual, valid and subsisting claims. So considered, plaintiff is entitled to credits against defendant representing his one-third interest in the items above set forth, pertaining to The Mill Company, to the amount of $456.14.

Next in order, we will consider matters for which defendant should account as a member of the firm of C. G. Shepard & Company, on the theory of the agency of that co-partnership for The Mill Company. Before the firm of C. G. Shepard & Company dissolved, that firm

sold to S. P. Reynolds certain timber for which it is admitted $1000 was paid, but the referee charged defendant on the basis of $800 only and allowed plaintiff $266.66 in respect of that item as representing his one-third interest. On review, the court treated with the item on the basis of $500 and charged defendant with $166.66, representing plaintiff's one-third interest therein. It is true the books of Shepard & Company show that they received only $500 cash from S. P. Reynolds but it is conceded in the testimony of both Shepard and Strother the firm received $1000 in cash for this timber, and plaintiff should be allowed $333.33 as his one-third interest therein. The referee allowed plaintiff $438.46 on account of his one-third interest in the balance due The Mill Company, as shown by the books of C. G. Shepard & Company. On reviewing this matter, the court allowed plaintiff $472.21 as one-third the balance shown to be due The Mill Company by such books. Upon inspecting the record, it is difficult to ascertain with any degree of precision what plaintiff should have. The books are not before us and only occasional excerpts therefrom are to be found in the record, besides all of the figures do not appear to be accurate. It may be mistakes were had in copying long accounts into the bill of exceptions. We believe, however, that $472.21, the amount found by the court, approximates the amount due plaintiff on this score and approve the finding of the court to that effect.

The referee denied plaintiff any interest whatever in respect of money received for the sale of 160 acres of land but the court allowed him $266.66 as one-third interest in $800, which it treated with as representing the value for which defendant should account pro rata. We believe this was error, for on any theory, if plaintiff recovers at all as to this, he is entitled to $200. As to this matter, it appears The Mill Company desired to buy the timber standing on 160 acres of land near the saw mill. Upon making inquiry, they discovered the

tract of land consisting of 160 acres, together with the timber thereon, could be purchased for $1000. Both plaintiff and defendant estimated the timber and agreed that it alone was worth almost, if not quite, $1000 as it stood. The three partners then met and agreed to buy the land. Plaintiff, who had charge of the saw mill, looked to his associates to consummate the deal. Shepard and Strother purchased the land and paid $1000 of their own moneys for it and took the title in the name of Shepard and Strother. The Mill Company cut the timber from the land, worked it up into lumber and paid $60 interest to Shepard and Strother, or C. G. Shepard & Company, on the $1000 they had invested therein. It is clear enough that the understanding at the time was, the land was to be purchased for the benefit of The Mill Company and the charge of interest against it for the investment is a convincing circumstance to that effect. Afterwards, before the partnership was dissolved, Shepard and Strother sold the land, the timber having been worked up, to one, Talley, for $1600. Plaintiff insists he is entitled to one-third interest of the amount his partners received for the land, that is $533.33. It is entirely clear that Shepard and Strother should account to the plaintiff on this matter, for they occupied a relation of trust as to him with respect to whatever benefits accrued to them through the purchase and the sale of the land in the circumstances referred to. But they should not be held to account for one-third the amount they received; for it was their money alone which was invested. In other words, plaintiff Grier contributed no part of the $1000 applied for the purchase price nor did The Mill Company, of which he was a member, for at the time it was without funds. Shepard and Strother alone advanced the money, $1000, and purchased the land. The Mill Company paid the interest to them on the money advanced and worked off the timber. Having thereafter sold the land for $1600, of course, Shepard and Strother are en-

titled to deduct the $1000 to repay that amount of their individual funds advanced and should be held to account because of the trust relation to plaintiff for his one-third interest in the profit made on account of the sale. The profit made was $600. Plaintiff's one-third interest therein is $200. The whole transaction having taken place prior to the dissolution of the partnership of C. G. Shepard & Company, of course, the present defendant is obligated on account of that partnership relation to respond to plaintiff for his full share.

From what has been said, it is manifest defendant should account for his one-third interest in property of The Mill Company, appropriated to his own use in the total sum of $456.14 and as a member of the firm of C. G. Shepard & Company in the amount of $1005.54; the total amount aggregating $1461.68.

We come now to review certain credits to which it clearly appears defendant is entitled. Plaintiff appropriated to his own use certain lumber which belonged to The Mill Company, valued at $50 and the court allowed defendant a credit of one-third of this amount, that is, $16.66. Ordinarily plaintiff as a joint obligor within the sense of the statute should respond for two-thirds of the amount of the lumber; for if plaintiff Grier appropriated $50 worth of lumber from The Mill Company, which consisted of three equal partners, then his interest in that lumber is $16.66 1-3 and the interest of his partners, Shepard and Strother is $33.33 2-3. The statute says, in all actions brought against one or more joint obligors or promisors, any debt or demand due from plaintiff to defendant in the action or to all the obligors or promisors in the contract sued upon may be set off against the demand of the plaintiff. [Sec. 1870, R. S. 1909.] Plaintiff Grier owes his two partners jointly $33.33 2-3 for two-thirds interest in the lumber appropriated in which he owned one-third, and under ordinary circumstances, this amount would be available

153 App—20

to defendant as an offset; for as a member of the mill partnership, the rights of Shepard inured to him in trust for Shepard's account.  But the rule is without influence in the peculiar circumstances of this case.  To apply it would ignore the most fundamental precepts of natural justice, for by so doing plaintiff would be required to respond for Shepard's interest in the lumber when he and his rights are stipulated out of the case entirely and other accountings are had on that basis. In this view, plaintiff should answer to defendant for such interest in the lumber as defendant alone may have had, that is defendant's one-third interest amounting to $16.66 1-3.

In his bill, plaintiff admits an individual indebtedness to the firm of C. G. Shepard & Company before and at the time of its dissolution, amounting to $1477.69. It seems this was an account for goods which plaintiff purchased throughout several years at the store of his partners, C. G. Shepard and J. D. Strother.  Besides admitting this indebtedness, $1477.69, in his bill, plaintiff testified to the fact of such indebtedness on the witness stand and insisted defendant should be credited to that extent.  Notwithstanding this, however, and notwithstanding the fact that the referee allowed defendant the benefit of this credit, the court, on reviewing the exceptions to the referee's report, allowed one-half of it only, that is to say, the court allowed defendant a credit of $738.85.  No one can doubt that plaintiff would be estopped by his pleading alone from disputing the credit which he conceded to be $1477.69.  [Harrison v. McReynolds, 183 Mo. 533, 82 S. W. 120; Cousins v. Bowling, 100 Mo. App. 452, 74 S. W. 168.]  But having admitted in his testimony that he owed C. G. Shepard & Company the amount mentioned, we are at a loss to ascertain on what theory the court allowed defendant the benefit of only one-half of that amount, for it was certainly all available to him under the pleading alone. Then, too, having sued defendant for an accounting in

part on the theory that he is responsible as the remaining solvent member of the firm of C. G. Shepard & Company which became indebted to The Mill Company on account of its agency in that behalf, of course, equity and good conscience require that defendant shall receive credit at least to the extent plaintiff was indebted to the firm of C. G. Shepard & Company on the obligation of which it is sought to charge defendant Strother. In other words, in so far as plaintiff predicates his right to recover against defendant as a member of the co-partnership of C. G. Shepard & Company on the obligation of that firm, the rights of that co-partnership inure in equity to defendant's benefit. If defendant is to respond for the co-partnership obligation, natural justice alone requires that it shall be only for such an amount as the co-partnership is indebted after first deducting such amount as plaintiff owed the firm on his individual account.

From items heretofore set forth, it appears defendant is to respond on the partnership obligation of C. G. Shepard & Company for the amount of $1005.54 and this being true, an equal amount, that is, $1005.54, of plaintiff's individual account with the co-partnership is available as an offset on the most familiar principles of equity alone. But the plaintiff's individual account in amount exceeds that sum by $472.15 and the important question is: What shall be the disposition of this balance? After plaintiff's account against C. G. Shepard & Company is offset by an allowance of the same amount to defendant, the balance for which plaintiff seeks a recovery stands as an individual indebtedness to him from Strother on account of The Mill Company, concerning which Shepard is to be regarded as out of the case. Such individual liability of Strother is ascertained to be $456.14.

By the bankruptcy of Shepard, it is undoubted one-half of the $472.15 balance due C. G. Shepard & Company passed to his trustee but in equity, no doubt that

partnership continued *inter se* to the extent at least for the purpose of collecting debts due and outstanding. In respect of these, Strother would occupy a relation of trust in favor of the trustee who succeeded to the rights of Shepard. But after granting so much, an account due a partnership is not to be set off against the debt of an individual member. [Lamb v. Brolaski, 38 Mo. 51.] So it is, if we look alone to the equities which lie between the parties and the rules of law which obtain, defendant Strother is not entitled to the benefit of the balance of $472.15 owing by plaintiff to C. G. Shepard & Company after offsetting accounts with that firm. This is true notwithstanding defendant Strother, on selling his interests to Shepard in the two partnerships, reserved the individual account of plaintiff from that transaction, for such account due the partnership is not available to him as an offset against his individual debt to plaintiff.

But, be all of this as it may, under the pleadings, the plaintiff cannot recover the balance found to be due him for the reason he is estopped thereby. Both in his bill and in his proof, plaintiff insists defendant shall have credit on the account as finally stated for the amount of $1477.69, which he owed C. G. Shepard & Company. A party may waive his rights, if he so desires, to an amount which may otherwise be found to be due him, or he may donate the entire amount to another. However much a court of equity may be inclined to ascertain and declare a true result in accord with the precepts of good conscience, it may not withstand the force and effect of such waiver intentionally done nor evade the consequence of an estoppel deliberately made by averment in the bill. Because plaintiff in his bill insists upon crediting defendant with the full amount of $1477.69, the court will do likewise.

From an examination of the whole matter, we ascertain the fact to be, and state the account, as follows:

Plaintiff should receive a credit for the total amount of $1461.68 against which he should be charged in favor of defendant in a total amount of $1494.35. After deduction, we find a balance due defendant of $32.67. The judgment will therefore be reversed and the cause remanded with directions to the trial court to enter a decree in favor of defendant against plaintiff for $32.67 and costs of suit. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.