CHARLES GLANZ

*v.*

ANNA M. SMITH.

*Opinion filed December 21, 1898.*

VOLUNTARY ASSIGNMENTS—*priorities acquired in good faith will be preserved.* The priority of the lien of an execution issued on a judgment note and levied on the debtor's property the day of his assignment but prior to the same will be preserved, where the debt is *bona fide* and there is no fraud or collusion.

*Glanz* v. *Smith,* 76 Ill. App. 630, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

JAMES A. PETERSON, for appellant.

JOHN M. CURRAN, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This action arose on the petition of appellant, filed in an insolvency proceeding on the estate of John Karlstrand, in the county court of Cook county. The purpose of the petition was to defeat the alleged validity and priority of a certain execution levy on the assets of Karlstrand under a judgment obtained by the appellee, Anna M. Smith, against Karlstrand.

The petition shows that Charles Glanz was a merchandise creditor of Karlstrand for $2369.04, and had, prior to the commencement of this action, filed his claim for that amount in the insolvency proceedings; that on December 3, 1896, Karlstrand executed a deed of assignment for the benefit of his creditors to J. N. Hennings, as assignee; that on December 2, 1896, Anna M. Smith caused judgment to be entered in the circuit court of Cook county against Karlstrand on a judgment note executed by him for $1000, and that at 9:40 A. M., December 3, 1896, caused execution to be issued and levied upon the merchandise of Karlstrand. While the records show the execution to have been levied prior to the assignment, it is claimed by appellant that the assignment and levy were a part of the same transaction, and that the judgment was entered and execution issued and levied all in pursuance of a conspiracy to give Anna M. Smith an unlawful preference in the assignment over the other creditors. Anna M. Smith was the mother of Karlstrand's wife, and J. N. Hennings was the book-keeper of Karlstrand. It is claimed by Anna M. Smith that J. N. Hen-

nings acted as her agent in all the transactions with Karlstrand leading up to the judgment and execution levy. The petition prayed for an answer by Anna M. Smith, but did not waive her oath. She answered, alleging the execution of the note by Karlstrand to herself, and its delivery by Karlstrand to Hennings, as her agent, and the subsequent entry of judgment and levy of execution on such judgment, etc. She also alleged good faith in all these transactions, and denied the charges of collusion and fraud. On December 5, 1896, J. N. Hennings resigned as assignee, and the court appointed the Chicago Title and Trust Company his successor. On December 9, 1896, an order was made, with the consent of all parties interested, directing the sheriff to turn over to the Chicago Title and Trust Company, assignee, the merchandise levied on under the execution of the appellee, but preserving whatever lien she had on the net proceeds of such property, and leaving the question of the validity and priority of that lien to be determined in the county court. On the trial the court found the issues in favor of defendant, decreeing her judgment a prior lien on the proceeds of the property in the hands of the assignee. From that decree the petitioner appealed to the Appellate Court for the First District, which court affirmed the decree of the county court, and appellant now appeals to this court.

No disputed propositions of law are involved in the case. Appellant relies almost entirely upon the testimony of Karlstrand and J. N. Hennings to support the controverted allegations of his bill. It is a fact about which there is no substantial conflict in the evidence, that appellee, on or about September 4, 1896, received $1000 from the Berkshire Life Insurance Company in payment of a policy of insurance on the life of Anton W. Smith, her son, and that this sum was loaned by appellee to Karlstrand on September 8, 1896, and that Karlstrand, in return, executed the judgment note sued on and de-

livered it to J. N. Hennings, as appellee's agent, and that this money was used by Karlstrand in his business. It appears that "612 Chicago Title and Trust Building" is a suite of five rooms; that John M. Curran, attorney, has one room there, Harvey Strickler, attorney, another, and L. G. Knight, attorney, also has an office there. On November 20, 1896, Hennings, becoming alarmed by the creditors of Karlstrand, went to the office of Strickler, who was Karlstrand's attorney, and informed him of his fears, and expressed a desire to have judgment entered on the note he held for Mrs. Smith. Strickler requested him not to do it, but to let Karlstrand continue the business and see if he could not straighten it out. November 27, 1896, Hennings again called upon Strickler and was again dissuaded from his purpose. The next day he called again, and after a short consultation Strickler sent him for Karlstrand. After further consultation Hennings again consented to wait. At this consultation Strickler informed Karlstrand, in the presence of Hennings, that if this judgment was entered he would be obliged to make an assignment. Karlstrand replied that if such a thing should happen he would suggest Hennings as a good man for assignee. Hennings made no reply. At this time Strickler refused to have anything to do with the Smith note because he was Karlstrand's attorney, but recommended attorney John M. Curran, and later, on November 30 or December 1, introduced Hennings to Curran. On December 1, 1896, Hennings had decided to enter judgment, and without the knowledge of Karlstrand or Strickler placed the note in the hands of Curran for that purpose, who, as stated above, on December 2 entered judgment on the same and caused execution to issue and a levy to be made thereunder.

In our opinion the evidence fails to show any fraud or collusion between the parties to the judgment note. It was executed September 8, 1896,—nearly three months before the assignment,—and it was against the wish and

protest of Karlstrand that Hennings caused the judgment to be entered. It was doubtless true that Karlstrand foresaw that Hennings might enter judgment on the note, and considered the assignment in such event; but we find nothing in the record on which to base the theory that Hennings acted in collusion with Karlstrand, or that Karlstrand even intentionally delayed making the assignment until Hennings had taken judgment and made a levy thereunder. On the other hand, Hennings had been dissuaded several times from entering judgment, the last time the matter was discussed being November 28, from which time until December 2, between five and six o'clock P. M., and after a creditor named Parker had given Karlstrand an ultimatum that if he did not pay him $277 by twelve o'clock (presumably the following day) he would attach his goods, Karlstrand did not know that Hennings had or would enter judgment or that an assignment would be necessary. Even then, at six o'clock P. M., December 2, he called upon his attorney, Strickler, for advice, who told him the best way was for him to go ahead. The evidence further shows that after the death of Anton W. Smith, and before appellee's judgment was entered, Karlstrand paid $122.06 to release a mortgage on property in the State of Washington owned by Anton W. Smith at the time of his death; also his funeral expenses, $67; also $30 dentist bill for appellee. It also appears that Karlstrand owed Anton W. Smith, at the time of his death, from $100 to $150, and had promised him to pay off the mortgage on the land in Washington. There is no evidence that any of the foregoing expenditures were made at the request of appellee. Under the facts shown we see no reason for holding the judgment void to the extent of these items, as insisted upon by appellant. They were in no sense proper credits upon the note for money loaned.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*