No. 12542

EDWARDS v. ATLANTIC COAST LINE R. CO. ET AL.

(146 S. E., 97)

278

284

*Messrs. Hyde, Mann & Figg,* for appellants,

*Messrs. Logan & Grace,* and *John I. Cosgrove,* for respondent,

December 6, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by Wallie L. Edwards, as plaintiff, against the defendants Atlantic Coast Line Railroad Company and Oliver C. Sanford was commenced in the Court of Common Pleas for Charleston County for recovery of damages for personal injuries alleged to have been sustained on February 3, 1925, at a place known as the "Etiwan Lead Track" at Etiwan Lane, alleged to have been caused by a collision of a train of cars of the Seaboard Air Line Railway Company, of which the plaintiff was the conductor, and an engine of the Atlantic Coast Line Railroad Company, of which the defendant, Oliver C. Sanford, was the conductor.

The allegations of the complaint necessary for an understanding of the case are as follows:

"Third. That, on or about the 3d day of February, 1925, the plaintiff above named, Wallie L. Edwards, was in the employ of the Seaboard Air Line Railway Company, a railway doing business in the County of Charleston and State of South Carolina, as a yard conductor and as such, in the course of his duty and employment, was in charge of a train of 24 empty cars which were being backed in the direction of the City of Charleston, with an engine pushing said train.

"Fourth. That, as said train approached what is known as the 'Etiwan Lead Track,' an industrial spur railroad track leading to the Etiwan Fertilizer Works, and as said train was approaching the point where the tracks of the Seaboard Air Line Railway Company cross said Etiwan

Lead Track, he signaled to the engineer in charge of said train of 24 empty cars to slow down, which said engineer did, bringing the speed of said train down to about 4 miles and hour; that plaintiff then looked down said Etiwan Lead Track to the west and saw that the road was clear. He then gave the engineer in charge of his train a signal to proceed, which said engineer immediately did; that a few minutes later, plaintiff looked again and saw a light switch engine owned, operated, and maintained by said defendant, Atlantic Coast Line Railroad Company, its agents and servants, and under the immediate charge, control, and direction of said defendant, Oliver C. Sanford, as conductor, approaching on said Etiwan Lead Track in an easterly direction; that it was then impossible for plaintiff to stop his train, but said light switch engine could have been stopped; that some employees of said defendant, Atlantic Coast Line Railroad Company, riding on the switch engine, shouted to the engineer to stop the light engine, but the engineer and fireman on said light switch engine were looking to the west and apparently did not see the train on which plaintiff was riding at all and said engine was allowed to proceed; that when the train on which plaintiff was riding and the light switch engine reached the crossing, they collided and the rear car of said train, on which rear car plaintiff was riding, buckled up and plaintiff was violently thrown forward and in order to save himself from falling between the cars and being crushed, he caught hold of the grabiron on top of the rear car and his right leg and knee were thrown with great force against said car and plaintiff received a terrible and fearful shock, jolt and jar.

"Fifth. That said jolt, jar and shock was so violent as to cause plaintiff shortly thereafter to develop paralysis and his whole right side and speech to become affected to such an extent that plaintiff is and always will be incapacitated from performing his duties as a railroad man and permanently injured.

"Sixth. That the injuries to plaintiff, as aforesaid, were caused by the joint and concurrent negligence, carlessness, recklessness, and wantonness of the said defendant corporation, its agents and servants, and the said Oliver C. Sanford, in the following particulars, to wit:

"(a) In not keeping a reasonable and proper lookout so as to have prevented said switch engine coming into collision with the car on which said plaintiff was riding.

"(b) In not keeping such a lookout and having said switch engine under such control as to become aware of the danger and immediately have stopped said engine.

"(c) In not taking such care and precautions as would have prevented said collision.

"(d) In not stopping said switch engine as soon as it appeared that a collision was imminent.

"Seventh. That by reason of the said joint and concurrent acts of negligence, carelessness, recklessness, and wantonness of said defendant corporation, its agents and servants, and the said Oliver C. Sanford, plaintiff was so injured as to be a helpless cripple, to be paralyzed on his right side, to have his speech affected, to be incapacitated from earning a livelihood and otherwise hurt and injured to his damage $50,000."

Each of the defendants by answer admitted the formal allegations of the complaint, and also admitted that at the time in question the plaintiff was in the employ of the Seaboard Air Line Railway Company, in the City of Charleston, as yard conductor, and as such, in the course of his duty and employment, was in charge of said train of the Seaboard Air Line Railway Company referred to in the complaint, which was being backed in the direction of the City of Charleston by means of an engine pushing said train. The remaining allegations of the complaint were denied; denied negligence, recklessness, willfulness, and wantonness on their part, and set up the plea of contributory negligence and contributory recklessness on the part of the plaintiff, in that

he kept no proper lookout to prevent the cars on which he was riding as conductor from backing into and upon defendant's engine, in that the train on which the plaintiff was riding as conductor did not come to a stop at the crossing, but ran upon the crossing, and thereby caused the collision. They also set up the plea that the plaintiff had received from the Seaboard Air Line Railway Company, a joint tort-feasor with the defendants, complete settlement for his alleged injuries sustained by reason of the matters alleged in the complaint, and that the plaintiff had executed and delivered to the Seaboard Air Line Railway Company a full discharge and release of all claims arising out of said matters alleged in the complaint, and that said "release and acquittance constitutes a bar to this action."

The case was tried before his Honor, Judge M. L. Bonham, and a jury, at the April, 1926, term of the Court of Common Pleas for Charleston County. At the conclusion of the testimony on behalf of the plaintiff, the defendants made a motion for nonsuit, on the grounds which will hereinafter referred to, which motion was refused. Upon conclusion of all of the testimony, the defendants moved for direction of a verdict. This motion was also refused, and the case was submitted to the jury, resulting in a verdict for the plaintiff against the defendants in the sum of $50,000.00. On motion for a new trial, the presiding Judge granted a new trial *nisi;* that is, granted a new trial unless plaintiff remitted on the record $10,000.00 of the amount. The plaintiff remitted on the record the amount required, and judgment was entered against the defendants for the balance, $40,000.00. From the judgment entered the defendants have appealed to this Court, pursuant to notice duly served.

The exceptions are nine in number, but, adopting the grouping of appellants' counsel, may be considered under three propositions, there being but three questions involved, and the same will be taken up in the order presented by counsel.

Under the first proposition, it is contended by appellants "that no other reasonable inference can be drawn from the testimony except that the plaintiff's own negligence *per se* in the violation of Section 4902 of the Civil Code of South Carolina (1922), Volume 3, and his negligence in failing to keep a proper lookout and in not stopping his train and in running his train into the engine of the defendants was a proximate cause of the collision and his injuries and that a nonsuit should have been granted and a verdict directed for the defendants on this ground."

If the only reasonable inference to be drawn from the testimony is that the plaintiff was negligent in the particulars named by appellants and that such negligence was the proximate cause of the plaintiff's injuries, then, of course, the plaintiff under the law would not be entitled to recover, and in that event a verdict should have been directed. But if there was a conflict in the testimony as to these facts, or as to any of the facts involved, or if appellants' version of the testimony was not the only reasonable inference to be drawn therefrom, and if more than one reasonable inference might be drawn therefrom, then the questions presented were questions for the jury. As we view the testimony, his Honor, the presiding Judge, properly refused motions for nonsuit and directed verdict.

A review of the testimony disclosed by the transcript shows that more than one reasonable inference may be drawn from the testimony as to whose act of negligence and what act of negligence was the proximate cause of the plaintiff's injuries. While there was testimony to the effect that the train of the Seaboard Air Line Railway Company (hereafter referred to as Seaboard), on which the plaintiff was riding, did not come to a complete stop before going upon the crossing in question in strict compliance with Section 4902, Civil Code (1922), vol. 3, there was some testimony offered without objection from which it might reasonably be inferred that the Seaboard train did stop before going

upon this crossing. In the course of plaintiff's testimony he stated:

"Q. You did not stop at the crossing? A. I stopped at the stop board, we don't stop right at the crossing, you stop a little piece before you get to the crossing, the stop board is about four car lengths from the crossing."

Again, in his testimony plaintiff stated:

"Q. If you had stopped four lengths from the crossing it would not have happened? A. When I got to the stop board and stopped and blew, I considered the crossing mine, then when I proceeded about a car length further I spied the Coast Line engine backing down by a building blowing no whistle and the engineer and fireman looking in the other direction."

In his complaint the plaintiff alleged that the train on which he was riding was, under his orders, brought down to a speed of about 4 miles an hour on approaching the point where the tracks of the Seaboard cross the said Etiwan Lead Track, and in the course of his testimony, in addition to the testimony above quoted, stated that on arriving at the stop board (a distance of about four car lengths from the crossing) he brought his train down to about "4 miles an hour;" "there was nothing in sight and transferred my signal to the engineer to back up," he stated. Several times in the course of plaintiff's testimony he stated that the train on which he was riding did not make a complete stop but slowed down to about 4 miles an hour, and we are rather af the opinion that when the plaintiff spoke of his train stopping, he meant that it slowed down to about 4 miles an hour; that is, practically stopped. But whether the plaintiff meant this or meant that he actually came to a full and complete stop was a question for the jury.

Assuming, however, that the Seaboard train did not come to a full and complete stop before going upon the crossing, as required by the Section of the Code referred to, and that the plaintiff was therefore guilty of negligence *per se,* it does

not follow that plaintiff's action would be defeated, unless such failure was the proximate cause of the plaintiff's injuries or contributed thereto as a proximate cause, combining and concurring with the negligence of the defendants; and whether or not such was the case was, under our view of the testimony in the case, a question for the jury. There was testimony tending to show that in spite of plaintiff's failure to stop the train the collision and consequent injury would not have happened but for the negligence of the defendants. There was ample evidence from which the jury might·conclude that the Coast Line engine was being operated carelessly, negligently, recklessly, and willfully immediately before and at the time of the collision, from which it might reasonably be inferred to have caused plaintiff's injuries. The plaintiff testified, in substance, on this point that on the day of the collision he was called out to work on a train down town; that he had 24 empty cars backing to the city, and when he came to the crossing, getting up to the stop board, he brought his train down to about 4 miles an hour; that there was nothing in sight, and he "transferred" his signal to the engineer to back up; that by the time he started to go back he looked and saw an engine with three men on the back; that he noticed the engineer·and fireman were not looking; that his (plaintiff's) switchman was blowing the back-up whistle, and that he, plaintiff, ordered the switchman to put on air, that is, put on the air brakes, testifying, further, on this point as follows:

"Q. Is that a loud whistle? A. Yes, sir, you can hear it for miles.

"Q. With that whistle blowing did or did not the engineer or fireman of the light engine look? A. No, sir. I tried to stop again, I told them to stop blowing the whistle and put on the air; that stopped the whistle when they did that. I was sitting on the side of the car, the switchman was using the air hose, I got up and got on top of the cars on the head car; that put me about middle way of the car; the engine was

proceeding, had used up the air blowing the whistle and I turned my back, the switch engine was proceeding and I knew there was going to be a collision and when it hit it tilted the car up and caused me to lose my grip and the jar threw me back and I fell between the following car and I caught the hand grab and I was hit by the hand brake * * * "

The plaintiff stated that there was a building located near the crossing that prevented him from seeing very far up the track of the Coast Line, and in answer to the question to tell the jury how the Coast Line engine could have been stopped and the collision prevented the plaintiff stated:

"On a switch engine they have a sloping tank and a foot board, you have all seen them on engines, two men can stand on them, on each side of the drawhead is an angle cock which you can couple up to box cars and it has a lever on it and a man can stop an engine as quick as the engineer by touching this cock, the man on the other side can reach it.

"Q. That engine was 124?   A. Yes, sir.

"Q. Were there any men riding on the back?   A. Three.

"Q. That engine you say could have been stopped?   A. Yes, sir.

"Q. It would have brought the train to a stop?   A. Yes, the same as the engineer applies his brakes, only it stops quicker, it has more severe power than the brakes, I think it would, I am not sure, but I know it will stop right now, I am not so much up on air, but I know it will stop."

The plaintiff testified further that he did not see anything on the crossing until his train got in about two car lengths, and then it was that he saw the Coast Line switch engine coming down the "lead" and plaintiff then told his man to put on air.   On cross-examination plaintiff was asked this question, "if you had stopped at the crossing the collision would not have occurred?" To which question the plaintiff answered, "If I had stopped still it could have happened the same way." The plaintiff testified that he was not able to stop his train after seeing the Coast Line engine in time to prevent

the collision, for the reason that he was too close to the cross-
ing, being about a car and one-half lengths from the crossing
when he first saw the Coast Line engine, and having a train
of twenty-four cars, the same could not be stopped in that
short a distance, but testified that the crew on the Coast Line
engine could have stopped that engine, that the Coast Line
engine was a switch engine and equipped so that it could be
stopped "right now," as he expressed it. The plaintiff testi-
fied, further, that the crew on the Coast Line engine blew no
whistle and rang no bell, paid no attention to the sounding of
the whistle on the train of the Seaboard, made no effort to
stop the Coast Line engine, and did nothing to prevent the
collision; that he, the plaintiff, did all he could to prevent the
collision. Plaintiff also testified that he slowed up his train
on reaching the stop board in compliance with the rule of
the railroad company, and, upon ascertaining that the way
was clear, sounded the whistle and went forward as required
by the railroad rules, to which testimony no objection was
interposed.

Mr. Mall, the engineer on the Seaboard train, in his testi-
mony corroborated the plaintiff, and further testified that
the Coast Line engine came out from behind a building,
"never blew a whistle or rang a bell, and we did not have
time to stop and the collision occurred." In answer to the
question, "What did you do?" said, "Started the whistle and
opened the air valve, that is all I could have done." "Q.
What did the crew of the Coast Line engine do to stop? A.
Nothing, jumped off and ran down the track."

Under the testimony, it is clear that the presiding Judge
properly overruled the motions for nonsuit and direction of
a verdict made on the grounds stated under the first question.

Under the second question the appellants contend:
"That no other reasonable inference can be drawn
fom the testimony than that the Seaboard Air Line
Railway Company and the Atlantic Coast Line Railroad
Company and Sanford were, if the latter two were negli-

gent, joint tort-feasors and jointly responsible to the plaintiff, and that his release to the Seaboard Air Line Railroad Company operated as a matter of law to release the defendants."

Appellants correctly contend that it is a well-established rule that the release of one joint tort-feasor releases the other joint tort-feasor from liability, but we do not agree with the contention "that no other reasonable inference can be drawn from the testimony than that the Seaboard Air Line Railway Company and the Atlantic Coast Line Railway Company and Sanford were, if the latter two were negligent, joint tort-feasors and jointly responsible to the plaintiff."

In presenting this proposition to the Court, counsel for appellants make the concession that the validity of their contention depends upon the negligence of the Seaboard, its agents and servants other than the plaintiff, but contends that the proof clearly establishes negligence on the part of the Seaboard, its agents and servants. It is their contention that the Seaboard was negligent as a matter of law in the following particulars:

"(1) In erecting a signboard 4 car lengths or 150 feet from the crossing or intersection in question when the statute required a stop before going upon the crossing to see that the way was clear and the testimony conclusively shows that the signboard was negligently, willfully and illegally placed at a location which would admit of no view up the Coast Line tracks at that point.

"(2) In providing by its rules for a stop only at the signboard so erected in violation of the statute instead of at the crossing or a point near thereto from which a view of the Coast Line tracks could be obtained.

"(3) In failing by some agent other than the plaintiff to bring the train to a stop before going on the crossing as required by the statutes, although by plaintiff's own testimony and that of his witness Mall there was time and dis-

tance enough to bring the slowly moving train to a full and complete stop after the engine of the Atlantic Coast Line Railway Company was seen.

"(4) In violating through its engineer the provisions of Section 4902 requiring a full and complete stop of the train before going on the crossing."

In our opinion these issues, under the testimony, were questions for the jury and that his Honor, the presiding Judge, properly submitted them to the jury under clear instruction.

As to the release to which appellants call attention, executed by the plaintiff and his wife, in consideration of the sum of $600, releasing the Seaboard from all claims and causes of action growing out of the collision, it is our opinion that the same does not furnish conclusive proof of the Seaboard being a joint tort-feasor, but was a matter to be considered by the jury in connection with the other testimony in the case in determining whether or not the Seaboard was a joint tort-feasor. On this point the plaintiff testified that he did not think the Seaboard liable or in any way responsible for his injuries, and it appears that the plaintiff thought that the amount of money paid to him by the Seaboard was paid to him because he was in the employment of that company. While a settlement with one or more joint tort-feasors will serve as a discharge as to the others, the rule has no application unless the one settlement is made with is guilty of the wrongful act. A settlement with one who has not committed the wrongful act charged could in no way relieve the actual wrongdoer from liability, and whether or not the Seaboard was jointly guilty with the defendants of the wrongful acts charged was, under the testimony, purely a question for the jury. Appellants make no contention that the jury did not receive proper instruction as to their duty on this issue, and a reading of the charge convinces us that the presiding Judge gave no ground for complaint as to the instruction given. His Honor concluded

his charge on this issue by charging in the exact language requested by the appellants; namely: "The jury is further instructed that if they find from the evidence that the plaintiff executed a complete release and discharge of the Seaboard Air Line Railway Company from all liability by reason of his injuries, and that the said Seaboard Air Line Railway Company and the said Atlantic Coast Line Railroad Company were jointly responsible for the injuries received by the plaintiff, then such release of the Seaboard Air Line Railway Company would also operate in law as a release of the Atlantic Coast Line Railroad Company, and that the plaintiff could not recover and that the verdict must be for defendants."

It is our opinion that his Honor, the presiding Judge, committed no error in overruling the motions for nonsuit and directed verdict based on the grounds stated under this division, and the exceptions charging error in this respect are overruled.

Under the third point or division, appellants contend that the presiding Judge "committed reversible error in not holding that the verdict of $50,000 was excessive and showed caprice and prejudice was against the manifest weight of the evidence and in not granting a new trial absolute."

According to the testimony, at the time the plaintiff was injured he was 44 years old and was earning a salary of about $200 per month; that up to the time of the injuries received he was in good health and had been in good health all of his life; that following the collision he was confined in a hospital for some time and has not been able to do any work since receiving the injuries, is now almost completely paralyzed, his speech is affected, and is totally and permanently unable to earn a living for himself and family, consisting of a wife and several chlidren. Such was the testimony of the plaintiff and several other witnesses, including physicians. The defendants offered no testimony to controvert

that offered on the part of the plaintiff as to the extent of his injuries. From the testimony the plaintiff appears to be in a most deplorable condition, and this was the opinion of the Judge who tried the case, as disclosed by the order he issued in passing upon the motion for a new trial. What credence should be given this testimony as to plaintiff's injuries and all of the testimony in the case was a matter for the jury. His Honor, the presiding Judge, who heard all of the testimony, on the motion for a new trial, in his discretion reduced the verdict from $50,000 to $40,000 but his Honor refused to set the verdict aside and grant a new trial absolute as asked for by appellants, and according to our view his Honor is amply sustained in his position by the facts of the case. Therefore the exceptions imputing error to the presiding Judge in overruling the motion for a new trial absolute cannot be sustained.

All of the exceptions are overruled, and it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

Mr. Chief Justice Watts concurs.

Messrs. Justices Blease and Stabler concur in result.

Mr. Justice Cothran dissents.

Mr. Justice Blease (concurring in result) : I base my concurrence in the result of the opinion as announced by Mr. Justice Carter, upon the able and clear reasoning of his Honor, Judge Bonham, as expressed in his order refusing the motion for a new trial in the cause.

Mr. Justice Cothran (dissenting) : I do not agree with the reasoning and conclusions announced in the opinion of Mr. Justice Carter for the reasons which follow.

This is an action against the Atlantic Coast Line Railroad Company for damages on account of personal injuries sustained by the plaintiff, a yard conductor employed by the Seaboard Air Line Railway Company, in a collision between a freight train operated under his control, upon which he was riding, and a switch engine of the defendant Coast Line,

operated under the control of the defendant Sanford, yard conductor, at a grade crossing of the two railroads, near Charleston.

Taking the allegations of the complaint in connection with the testimony in the case, the admitted facts are as follows:

A short distance from the City of Charleston, the two railroads cross each other at grade; the Coast Line track runs east and west; the Seaboard track runs north and south. The plaintiff, as yard conductor of the Seaboard, was in charge of a freight train consisting of an engine and 24 cars; the train was being backed in the direction of Charleston, southward; the plaintiff was riding on top of the leading box car a sthe train was backing; on the side of the track, about 200 feet from the crossing of the two railroad tracks at grade, the Seaboard Company had erected a "Stop Board," calling upon the operators of a train moving in the direction of the crossing to come to a full stop before attempting to make the crossing, as the Statute (Section 4902, Vol. 3, Code 1922) required; as the train approached the "stop board," the plaintiff signaled to the engineer to *slow down,* which he did, bringing the speed of the train down to about 4 miles an hour; seeing the crossing clear from that point he gave the engineer a signal to proceed, which he did, at the rate of about 12 miles an hour.

In the meantime a switch engine on the Coast Line intersecting track was moving eastward, towards the crossing; it neither stopped nor gave any signal of its approach; a house on the side of the Coast Line track obscured the view of the operators of each of the trains; when the plaintiff did see the switch engine, it was impossible for the freight train to be stopped (as the plaintiff claimed) in time to avoid the collision; as the switch engine reached the crossing it was stopped on the crossing to change a switch, and the collision occurred; the leading box car of the backing freight train struck the switch engine on the side and overturned it. The plaintiff, who was on top of the leading car of the backing

freight train, was thrown violently between it and the next following car and seriously injured.

The complaint alleges substantially the foregoing facts. The answer denied the material allegations of the complaint, set up the defense of contributory negligence on the part of the plaintiff, and pleaded as a satisfaction of any claim which the plaintiff may have had against the Coast Line a release which he had executed to the Seaboard for all damages to which he might have been entitled as against that company; the defendants claimed that the injury was caused by the joint and concurrent acts of negligence of both companies, and that a release of one joint tort-feasor constituted, in law, a release of the other.

The case was tried by his Honor, Judge Bonham, and a jury at the April term, 1926.

At the close of the testimony for the plaintiff, the defendants moved for a nonsuit upon the following grounds, which was refused:

"First: That under the testimony of the plaintiff and all the testimony in the case there is an admission of a violation of the statute which we have pleaded in the answer; the statute provides that before crossing a crossing the train must come to a stop. Now there is a very strong inference that if they had stopped the accident would never have happened, so that was the direct and proximate cause of the injury; there is no use talking about stopping somewhere else and he judged he had the right of way and because there was a house there and he did not think anything was coming; the statute says, Section 4902, 'Whenever any railroad track crosses the track of any other railroad except where interlocking signals and safety devices are in use, it shall be the duty of the engineer or person in control of the train, etc., to come to a full or complete stop before crossing said crossing.'

"Now here is a release discharging the Seaboard Air Line Railway Company by the payment of $600; now they come

together on the crossing the one claiming that the other was at fault and *vice versa,* and if there was any liability it was a joint liability and the question is who is responsible, and the question is whether both were responsible, now here is a release which discharges the Seaboard Air Line; now what is the result of that if it does not protect us; if this verdict is against us we can't claim against the Seaboard Air Line because the plaintiff has released them, where two parties are concerned, so that if one has to pay he has a right of action against the other, that is a joint liability in law."

At the close of all of the testimony the defendants moved for a directed verdict upon the following grounds, which was also refused:

"We move for a directed verdict on the same grounds as argued on the motion for a nonsuit. with the additional ground that the testimony of the defendant shows absolutely that the negligence of the plaintiff was the proximate cause of the accident; the S. A. L. train came on the crossing without stopping at the crossing and without giving any signals and it seems that the only reasonable inference is that while we were there for the purpose of changing the switch, their train came right down on us in violation of law."

The case was then submitted to the jury which rendered a verdict in favor of the plaintiff for $50,000.

Upon motion for a new trial the trial Judge granted an order of new trial *nisi,* requiring the plaintiff to remit $10,-000 of the verdict or submit to a new trial; this he did. Judgment was then entertd for $40,000 and from it the defendants have appealed.

The grounds of the motion for a new trial and the order of the Circuit Judge thereupon will be reported.

There are three main questions to be considered in the determination of this appeal:

1. Was there error in refusing the motion of the defendants for a nonsuit and their motion for a directed verdict, upon the ground that no other reasonable inference can be

drawn from the evidence than that the plaintiff was guilty of such contributory negligence as bars a recovery?

2. Was the order refusing a new trial, out and out, based upon an erroneous construction of the law?

3. Was there error in refusing the motion of the defendants for a nonsuit and their motion for a directed verdict, upon the ground that the release of the Seaboard, one of the joint tort-feasors, by the plaintiff, constituted a release of the Coast Line, the other?

I. *The refusal of the motion of the defendants for a nonsuit and the motion for a directed verdict upon the ground of the plaintiff's contributory negligence.*

Section 4902 of the Code provides:

"Whenever any railroad crosses the track of any other railroad, except where interlocking and signalling safety devices are in use, it shall be the duty of the engineer, or person in control of the train, besides giving the signals required to be given near all crossings, to bring the train to a full or complete stop before crossing the said track; the same rule to apply to the running of a locomotive by itself without a train."

The clause "besides giving the signals required to be given near all crossings" has not been construed, so far as I am advised. It apparently refers to the signals required to be given before crossing a highway, Section 4903, immediately following Section 4902, both enacted in the same Act of 1882, 17 St. at Large, p. 824.

The first question to be decided is whether or not the evidence admits only of the inference that the plaintiff failed to stop his train before attempting to cross the track of the Coast Line, as required by this Statute.

The plaintiff is estopped from disputing the truth of this allegation of his complaint:

"That, as said train approached, what is known as the 'Etiwan Lead Track,' an industrial spur railroad track leading to the Etiwan Fertilizer Works, and as said train was ap-

proaching the point where the tracks of the Seaboard Air Line Railway Company cross said Etiwan Lead Track, *he signaled to the engineer in charge of said train of 24 empty cars to slow down, which said engineer did, bringing the speed of said train down to about 4 miles an hour;* that plaintiff then looked down said Etiwan Lead Track to the west and saw that the road was clear. He then gave the engineer in charge of his train a signal to proceed, which said engineer immediately did. * * * "

The defendant Coast Line relied upon the contributory negligence of the plaintiff in violating the statute by not stopping his train *as he alleged in his complaint.* It was therefore, under the pleadings, a conceded and agreed fact in the case that he slowed down, but did not stop; he is estopped from denying that fact.

"As a general rule a party is estopped from taking a position which is inconsistent with one previously assumed in the cause of the same action or proceeding. *He is bound by allegations or admissions in his own pleadings.* * * * " 10 R. C. L., 699.

In *La Follett v. Mitchell,* 42 Or., 465, 69 P., 916, 95 Am. St. Rep., 780, the defendant, in his answer having alleged the official character of a constable who made a certain seizure, was not permitted upon trial to question the fact admitted in his answer.

In *Aultman & Taylor Co. v. Gunderson,* 6 S. D., 226, 60 N. W., 859, 55 Am. St. Rep., 837, it was held that one cannot at the same time assert that a fact exists and prove that it does not exist.

In *Wilcoxson v. Burton,* 27 Cal., 228, 87 Am. Dec., 66, it was held: "Party is estopped by his answer from showing the averments therein contained to be untrue."

In *Knoop v. Kelsey,* 102 Mo., 291, 14 S. W., 110, 22 Am. St. Rep., 777, it was held: "A party is estopped by the allegations in his own pleadings." "A party must abide by the statements made in his own pleading." *Glanz v. Smith,* 177

Ill., 156, 52 N. E., 486; *Stone v. Young,* 4 Kan., 17; *Welborn v. Ritter* (Ky.), 16 S. W., 360; *Cousins v. Bowling,* 100 Mo. App., 452, 74 S. W., 168; *Wells v. Ragsdale,* 102 Ga., 53, 29 S. E., 165; *Denison & N. R. Co. v. Raney-Alton Mercantile Co.,* 3 Ind. T., 104, 53 S. W., 496; *Seivers v. Martin* (Ky.) 82 S. W., 631; *Lane Implement Co. v. Lowder,* 11 Okl., 61, 65 P., 926; *Rogers v. Brown,* 15 Okl., 524, 86 P., 443; *Miller v. Camp,* 45 Or., 192, 77 P., 83; *Crane v. Franklin,* 17 Ariz., 476, 154 P., 1036; *Sims v. Farson,* 220 N. Y., 710, 116 N. E., 1075; *Holbrook v. Quinlan,* 84 Vt., 411, 80 A., 339. For other cases see Dec. Dig. Pleading, 36 (1).

"Where a plea both admits and denies the execution of a contract which binds the pleader, * * * the admission and not the denial must prevail," *Moultire v. Schofield,* 6 Ga. App., 464, 65 S. E., 315; *Sheppard v. Daniel Miller Co.,* 11, Ga. App., 514, 75 S. E., 907. "An admission in a pleading is conclusive, and evidence showing the contrary, though admitted without objection, must be disregarded." *Pennachio v. Greco,* 107 App. Div., 225, 94 N. Y. S., 1061. " * * It is true, as a general rule, that an admission in a pleading is taken as conclusive of the fact admitted. * * * " *Talbert v. Hamlin,* 86 S. C., 523, 68 S. E.. 764. "Any departure in the evidence from the substance constitutes a variance and is fatal, or is frequently the effect, constitutes a failure of proof." 21 R. C. L., 609.

But aside from this estoppel, his testimony, over and over again, is most positive that he slowed down the train to 4 miles an hour, *but did not come to a full stop.*

In his testimony, mostly in the direct examination (naturally where his case would be most strongly presented), he said:

"I had 24 empty cars backing to the city and I had an air hose on the back and when I came to this crossing when I got to my stop board I *brought down my train to about 4*

*miles an hour;* there was nothing in sight and I transferred my signal to the engineer to back up. * * * ”

Again:

“Q. How· fast were you going when you went on the crossing? A. About 12 miles when I got to the stop board.

“Q. How far was the stop board from the crossing? A. about 4 lengths, *I brought my train down to about 4 miles when I got there.*

“Q. You did not stop? A. No, sir, never came to a dead stop, I blew my back-up whistle for the crossing and proceeded back.”

Again:

“When I got to the stop board *I had my train down to about 4 miles an hour,* I saw the crossing clear.”

Again:

“*If I had stopped* still it could have happened the same way.”

Again:

“*I brought the train down to 4 miles at the stop board* and the crossing was clear and I proceeded back.”

Again:

“You say you *brought it down to 4 miles at the stop board* and you proceeded on? A. Yes, sir.”

Again:

“I saw him *when I got to my stop board and brought my train down to about 4 miles an hour* and saw the crossing was clear.”

Again:

“*I brought my train down to 4 miles an hour at the stop board,* and I blew for the crossing.”

It is true that, at times in his cross-examination, the plain·tiff testified that he stopped at the “stop board,” but manifestly, as Mr. Justice Carter observes:

“ * * * We are rather of the opinion that when the plaintiff spoke of his train stopping, he meant that it slowed down to about 4 miles an hour, that is, *practically stopped.*”

In the vernacular of the calling, as shown by the testimony of the switchman, who was on the car with the plaintiff:

*"We came down to a stop of about 4 miles an hour at our stop board,* and blew the back-up whistle and proceeded about a car length from the crossing."

The same switchman, Mall, further testified, as a witness for the plaintiff:

"Q. Did you stop at the crossing? A. No, sir."

Again:

*"We could not see that crossing until we got up to it, we brought the train down to 4 miles at the stop board* provided by law. * * * When we gave the signal to back up, I would judge around 6 miles an hour. * * *

"Q. *So you never did stop the train? A. Not to a dead stop.*

"Q. Don't you know the law requires a dead stop? A. I know the rules require it. * * *

"Q. *And you did not come to a full stop? A. Not a dead stop, we stopped about 200 feet from there and brought the train down to about 4 miles an hour."*

It must be assumed that the complaint, "the story of plaintiff's wrongs," which alleges that the plaintiff *did not stop for the crossing* as the statute requires, *that he only slowed down to 4 miles an hour,* was but the replication of the plaintiff's narrative to his attorneys.

It appears beyond question that, by the plaintiff's own complaint and testimony and the testimony of his witness, the man who was with him when the collision occurred, the Seaboard train was not brought to a "full and complete stop before crossing the said track," as specifically enjoined by the statute. It is absolutely certain that the ordinary signals for a highway crossing were not attempted to be given.

Now, then what is the legal effect of the fact that the plaintiff violated the statute law of the State, thus established beyond even a doubt?

It must be borne in mind that he violated not only the requirement of the statute that he bring his train to a "full and complete stop," but also the requirement that he give "the signals required to be given near *all crossings*," in addition.

It has been held in many cases that the failure to observe the precautions required by law for the safety of others, whether by statute or municipal ordinance, is as a matter of law negligence, or as commonly termed, *negligence per se* (which in fact adds nothing to the pronouncement that it constitutes negligence as a matter of law).

It was decided in the case of *McBride v. Atlantic Coast Line R. Co.,* 140 S. C., 260, 138 S. E., 803 (a decision with which I did not agree, but which is now the law of this Court), that the failure of a railroad company to sound the statutory signals for a crossing at which a collision occurred is not only negligence *per se,* but it raises a presumption that the neglect to give the signals was *the* proximate cause of the collision; and in numerous cases it has been held that the neglect is sufficient to carry the case to the jury upon the issue of willfulness. *Folk v. R. Co.,* 99 S. C., 284, 83 S. E., 452, and others.

It is true that in the *McBride case,* the Court, while holding that the failure to comply with the signaling statute raises a presumption that such failure was the proximate cause of the collision, held that it "merely establishes a *prima facie* case, which may be overcome by testimony, whether given for the plaintiff or for the defendant."

I think that a distinction should be drawn between the legal effect of the violation of a safety statute as evidence of negligence and as evidence of that negligence being the proximate cause of the injury. While under the *McBride case* it furnishes a legal presumption of having been the proximate cause, it is a rebuttable presumption. On the other hand, it is a mistake to say that the law *presumes* negligence, makes it negligence *per se* by presumption, where

there appears the violation of a safety statute; the law does not *presume* it; it *declares* it to be negligence. There is no possibility of avoiding that conclusion by any kind or amount of evidence; it is a legal principle that continues through the entire trial, unaffected by any evidence that might be produced.

The question of its having been *the* proximate cause or *a* proximate, contributing cause is quite another one. The very discussion of the question presupposes the continuance of the principle of negligence *per se*. The conclusion that it was not the proximate cause, or not a proximate, contributing cause (resolved as the case may be, by the Judge or by the jury does not overthrow the legal principle that the act was negligence *per se;* it simply relegated the act to the category of innocuous instances of negligence. In the case of *Glenn v. R. C.,* 21 S. C., 466, it was held that a railroad company that ran an engine at night without a headlight, was guilty of negligence, but as the injured party was aware of the train's approach, notwithstanding the absence of the headlight, there was no proximate connection between the negligence and the injury. *The fact that there was no such connection did not change the legally fixed character of the act.*

In *McCown v. Muldrow,* 91 S. C., 523, 74 S. E., 386, Ann. Cas. 1914A, 139, the Court said:

"There was testimony tending to show that the defendant was driving his automobile when the injury was sustained at a rate of speed greater than was allowed by the ordinance of the city; and this was evidence *per se,* and not merely *prima facie,* of negligence. In *Whaley v. Ostendorff,* 90 S. C., 281 (73 S. E., 186), the Court says: 'When evidence \*.\* \* is only *prima facie,* it is subject to rebuttal, but when there is negligence *per se, it is conclusive of that question.* The fact that there is negligence *per se* does not, however, tend to show that such negligence is actionable. The question whether negligence is actionable depends upon the fur-

ther question whether such negligence was the direct and proximate cause of the injury.' "

As said in 3 Elliott R. R. (3d Ed.), § 1648:

"Negligence *per se* may work no serious injury to any person, not because it is not wrongful in itself, but because no one is in position at a particular time to be injured."

So that in the case at bar we have the conclusion that the plaintiff, in failing to comply with the "stop" statute, was guilty of an act of negligence which continued unchanged and unchangeable throughout the trial, and the *prima facie* presumption under the *McBride case,* that it was at least *a* proximate cause of the collision.

I submit that there is not a particle of evidence in the case that *tends even* to detract from the force of this presumption. The conclusion is irresistible, therefore, that the plaintiff's neglect was a proximate, contributing cause, and as such should have barred his recovery.

II. *The erroneous principle of law announced as the basis of refusing the motion of the defendants for a new trial.*

It appears appropriate to discuss certain conclusions announced in the opinion of Mr. Justice Carter, in connection with the order of his Honor Judge Bonham in refusing the motion of the defendants for a new trial, for the reason that they disclose the identical misconception of the law: That the proximate, contributing character of the plaintiff's act is to be determined by the absence of negligence on the part of the defendants; in other words, no matter how reprehensible the plaintiff's act may have been, as regards due care under the circumstances, his act cannot be considered a proximate cause of the collision if it appears that the defendants were guilty of an act of negligence which was a proximate cause.

In the opinion proposed, it is said:

"Assuming, however, that the Seaboard train did not come to a full and complete stop before going upon the crossing, as required by the Section of the Code referred to, and

that the plaintiff was therefore guilty of negligence *per se,* it does not follow that plaintiff's action would be defeated, unless such failure was the proximate cause of the plaintiff's injuries, or contributed thereto as a proximate cause, combining and concurring with the negligence of the defendants."

All of which is entirely correct, and necessarily implies that if "such failure *was* the proximate cause of the plaintiff's injuries, or contributed thereto as a proximate cause, combining and concurring with the negligence of the defendants," the defendants would be entirely relieved of liability; but the learned Justice, after declaring that the question of contributing, proximate cause was one for the jury, proceeds to declare that that issue is to be determined *not by the character of the plaintiff's act, but by the question whether the defendants were guilty of negligence in violating the terms of the statute,* a matter about which there was no controversy, as if the negligence of the defendants would absolve the plaintiff from his admitted negligence. If that be the law, the defense of contributory negligence may as well be wiped from the books. To say that the proximate, contributing character of the plaintiff's act is to be determined by the absence of negligence on the part of the defendant, which itself is an essential element in the application of the doctrine of contributory negligence, is to declare that there can be no such defense as contributory negligence.

The error is accentuated also in the following statement:

"A review of the evidence disclosed by the transcript shows that more than one reasonable inference may be drawn from the testimony *as to whose act of negligence was the proximate cause* of the plaintiff's injuries."

If that is intended to mean that there was evidence tending to show that the negligence of the Coast Line was the sole proximate cause of the collision, I think that the error is manifest, for it overwhelmingly appears that both railroads were guilty of negligence in not obeying the statute,

and, of course, the act of neither could have been the sole proximate cause.

His Honor, the Circuit Judge, fell into the same error in assuming that the proximate, contributing character of the plaintiff's act was to be determined by the absence of negligence on the part of the defendants.

He held in the order:

"There was evidence from which the jury might conclude that, *in spite of plaintiff's failure to stop the train, the accident would not have happened but for the negligence of the defendants.* There was evidence from which they might conclude that defendant's engine was being run in a careless and negligent manner, amounting indeed to recklessness, by the regular crew and an extra crew going over to the Fertilizer Works to bring back a train; that they were paying no attention to the crossing; that they were keeping no lookout; that they did not heed the signals of the train approaching on the Seaboard tracks, but that they gave no signals when approaching the crossing, and did not stop the engine when approaching it, but ran the engine upon it and stopped it there in the face of an approaching train, which, with the exercise of ordinary case, they were bound to have seen; and were bound to have seen that the other train was so close to the crossing that it was not possible to stop it before reaching it. *It was the consideration of those facts which constrained me to refuse the motions for nonsuit and for directed verdict, and which now constrain me to overrule this ground of the motion for new trial.*"

The learned Circuit Judge appears to have been of the same mind with Mr. Justice Carter in supposing that the issue of the proximate, contributing character of the plaintiff's act must be decided in his favor, if it appeared that the defendants were guilty of a proximate, contributing cause; the very condition that gives birth to the defense of contributory negligence. It goes without saying that if the negligence of the *defendants* was the sole, proximate cause, there is no

room for a contributing cause on the part of the plaintiff, and that if the negligence of the *plaintiff* was the sole, proximate cause, there is no room for the negligence of the defendants; but if each was guilty of an act which was a direct, proximate, contributing cause, the law leaves both parties where it found them.

If it be assumed, as it is by both the Circuit Judge and Mr. Justice Carter, that the Seaboard did not stop for the crossing, I do not see how it is possible to conclude that there is a question even, but that its negligence was at least *a* proximate, contributing cause of the collision. The statement of the plaintiff that, even if he had stopped his train before reaching the crossing, the collision would have occurred anyhow is absurd and worthy of no consideration. It is as certain as any probability can possibly be that if he had obeyed the injunction of the statute, the collision would not have occurred. His act was an act of negligence, so declared by the law; it as certainly had a most active part in producing the disaster.

I concede that the negligence of the plaintiff cannot be held to have been a contributing cause to the extent of relieving the defendants, unless it be shown to have been a proximate cause of the collision; *but that issue is to be determined by the acts of the plaintiff, not by the absence of negligence on the part of the Coast Line.*

In *Frese v. Railroad Co.*, 263 U. S., 1, 44 S. Ct., 1, 68 L. Ed., 131, the case was governed by an Illinois statute quite similar to Section 4902. The plaintiff's intestate was an engineer; he brought his train to a full stop about 200 feet from a crossing of two railroads at grade; the train on the other track stopped about 300 feet away. His was the Burlington track; the other the Wabash track; the view of the Wabash track from the Burlington was obstructed intermittently until the crossing was reached. The two trains did not discover each other, but both started on again and collided, killing Frese. The Court held that notwithstanding his

stopping it was the duty of Frese positively to ascertain that his train could safely resume its course and that on account of his breach of this personal duty his administratrix could not recover.

Granting every allegation and charge of negligence made against the defendants to be absolutely true, it is evident that the plaintiff in charge of the Seaboard train was guilty of like negligence in every respect, and primarily was guilty of violating the statutory law of the State enacted to prevent such accidents ,and by that violation of law brought about his own injuries. He charges that the defendants did not stop at the crossing; *he* did not stop at the crossing; he charges that the defendants did not see his train; *he* did not see the defendants' engine any sooner; *he* charges that the defendants' engine could have stopped; his testimony shows that *he* could have stopped his train; *he* says that the engineer and fireman on the defendants' engine were not looking and did not see his train, and yet he says that he was looking and saw that they were not looking; *he* says that if the defendants had not broken the law requiring the engine to stop before proceeding on the crossing, the accident would not have happened; his testimony unmistakably shows that if *he* had not broken the same law, requiring his train to *stop,* the accident would not have happened. There is nothing which the defendants did that the plaintiff himself did not do; there is nothing which the defendants failed to do that the plaintiff did.

If the act of the plaintiff, negligence *per se,* in not bringing the train to a full stop was not a proximate cause of the collision, *for the reason that the Coast Line employees were negligent in not bringing the switch engine to a full stop,* and that for that reason the plaintiff was not guilty of contributory negligence, it seems clear that, so far as the conduct of the plaintiff is concerned, the Seaboard was guilty of no negligence in the matter. And by the same process of reasoning the act of the employees of the Coast

Line, negligence *per se,* in not bringing the switch engine to a full stop was not a proximate cause of the collision, *for the reason that the Seaboard employees were negligent in not bringing the freight train to a full stop.* The net result of this conclusion·would be that where both companies admittedly violated the statute, and a collision resulted, neither one was guilty of negligence.

Turn the ˙case around, and suppose that the engineer of the switch engine had been the injured party, and was the plaintiff in an action against the Seaboard, can there be any doubt but that the Seaboard could have successfully defended his action upon the ground of his contributory negligence, even with the admission that the operators of its train had not obeyed the statute?

The defense of the defendant railroad company, the contributory negligence of the plaintiff, is based upon the assumption, *pro hac vice,* of its negligence. To hold that proof of its negligence renders negligible further consideration of the plaintiff's negligence is necessarily to eliminate the defense of contributory negligence.

In the case of *Cooper v. Railroad Co.,* 56 S. C., 91, 34 S. E., 16, the presiding Judge charged, in effect, that, although the plaintiff may have been guilty of negligence, yet if notwithstanding his negligence the defendant might have avoided the injury by the exercise of due care, the plaintiff might recover. The Court held that this was error, saying: "It is thus seen that contributory negligence by a plaintiff can never exist except when the injury has resulted from the negligence of ˙the defendant as a concurring proximate cause. In view of this, and of the well-established rule that contributory negligence [constituting *a* proximate cause, I interpolate], to any extent will always defeat a recovery, it was error to instruct the jury as above. *The effect of the instruction was to eliminate contributory negligence as a defense."*

"It is thus seen that contributory negligence by plaintiff can never exist except when the injury has resulted from the negligence of the defendant as a 'concurring proximate cause.' " *Wilson v. Railroad Co.,* 73 S. C., 481, 53 S. E., 968.

"This definition [of contributory negligence] imports that there must be negligence of the defendant operating with that of the plaintiff to produce the injury. * * * " *Charping v. Toxaway,* 70 S. C., 470, 50 S. E., 186.

In *Kennedy v. Railroad Co.,* 59 S. C., 535, 38 S. E., 169, the Court said:

"Indeed, we may add, that the defense of contributory negligence, so far from tending to deny or disprove negligence on the part of the defendant, necessarily involves, by the very meaning of the term 'contributory,' and admission of defendant's negligence, but the plaintiff's negligence combining and concurring with the negligence of defendant, as a proximate cause thereof, has produced the injury complained of. See 7 Am. & Eng. Ency. of Law (2d Ed.), at page 371; *Cooper v. Railway Co.,* 56 S. C., 91 [34 S. E., 16]; *Bowen v. Railway Co.,* 58 S. C., 222 [36 S. E., 590]; *Simms v. Railway Co.,* 26 S. C., at page 490 [2 S. E., 486]."

In *Jones v. Railroad Co.,* 61 S. C., 556, 39 S. E., 758, the charge excepted to was this:

"But unless the contributry negligence was the proximate cause of the accident, and if in spite of such contributory negligence [that is, negligence which contributed as a proximate cause], the accident could have been avoided by the use of ordinary care on the part of the defendant, then plaintiff is still entitled to recover."

The Court held it error, saying:

"The charge destroyed the defense of contributory negligence. In *every* case where there is contributory negligence, the defendant could have avoided the injury by ordinary care, for the simple reason that there can be no such thing as contributory neligence unless the defendant be negligent.

The error complained of is the same error which was condemned in *Cooper v. Railway Co.,* 56 S. C., 94 [34 S. E., 16]. The law in this State is settled that contributory negligence as defined in the *Cooper case, supra,* to *any* extent will *always* defeat plaintiff's recovery, unless the injury is wantonly or willfully inflicted; for the law cannot measure how much of the injury is due to the plaintiff's own fault, and will not recompense one for injury resulting to himself from his own misconduct. The objection to the charge is that it instructed the jury that although plaintiff's negligence contributed to her injury as a proximate cause, she could recover if the defendant by ordinary care could have avoided the injury. Is it not manifest that such a rule would abolish contributory negligence as a defense?" (Italics by the Court.)

There is abundant evidence of the fact, admitted by the defendant railroad company, that those operating the switch engine also failed in their duty to come to a full and comulete stop for the crossing, but the negligence of the defendant railroad company and the individual defendant, in thus violating the statute, does not relieve the plaintiff from his share in the events that brought about the collision, manifestly an act of negligence *per se,* presumptively at least *a* proximate cause of the collision (*McBride case*), and sufficient to go to the jury upon the charge or willfulness.

*It appears conclusively that the proximate character of the plaintiff's alleged contributory negligence is not to be determined by the absence of negligence upon the part of the Coast Line.*

If an order refusing a new trial be based upon an erroneous conception of the law, the appellant is entitled to a reversal of it. That it was sufficiently appears from what is said above.

III. *The refusal of the motion of the defendants for nonsuit and the motion for a directed verdict upon the*

*ground that the release of the Seaboard constituted a release of the Coast Line.*

It is conceded in the opinion of Mr. Justice Carter that the release of one joint tort-feasor from liability releases the other, as to which I think that there can be no question.

It is admitted that the Coast Line employees did not obey the statute; their failure was negligence *per se,* and under the *McBride case* was presumptively, *prima facie,* a proximate cause of the collision. There being no evidence tending to weaken that presumption, it becomes a fixed fact that it was a proximate cause.

There is an exceedingly diluted contention that the plaintiff did not fail in this duty, a matter which I have endeavored to dispose of in an earlier part of this opinion. If my conclusion in reference to it is sound, it follows that both companies violated the law and that the act of each was a proximate, contributing cause of the collision, making them joint tort-feasors. The release of one discharges the other, as is conceded.

I think, therefore, that the judgment of this Court should be that the judgment of the Circuit Court be reversed and that the case be remanded to that Court for judgment in favor of the defendants under rule 27; at the least, that there should be a new trial for error in refusing the motion for a new trial, based as that refusal was, upon a misconception of the law.

## On Petition for Rehearing

*Per Curiam.* After a careful consideration of the petition for a rehearing herein, in connection with the transcript of record, we are satisfied that no question of law or material fact involved in the case has been overlooked. A rehearing must therefore be refused, and the petition is hereby dismissed.

Mr. Justice Cothran (dissenting) : I think that the petition should be granted, for the following reasons :

I. The opinion declares :

"There was some testimony offered without objection, from which it might reasonably be inferred that the Seaboard train *did* stop before going upon the crossing."

I do not see how it is possible, from the allegations of the complaint and the testimony of the plaintiff himself (not to speak of the testimony of the switchman who was with him on top of the car), to reach this conclusion.

In addition to the observations upon this point in my dissenting opinion, counsel for the appellants call attention to the following exceedingly significant facts :

The very last utterance of the plaintiff in his testimony, upon the question of stopping before attempting to cross the Coast Line track, was this :

"Q. You mean that you were running at four miles an hour? A. *I brought my train down to 4 miles an hour at the stop board,* and I blew for the crossing."

While he did say, after no less than 8 times stating that he did not stop, and *alleging in his complaint* that he did not stop, that he did stop at the stop board, whatever ambiguity existed in his previous testimony was beyond question explained and dispelled by this final word. It is clear that he meant that slowing down to 4 miles an hour was practically stopping, as explained by his switchman and believed by Mr. Justice Carter as shown in his opinion. That this was the impression of his counsel is shown by his redirect examination :

"Q. When you came to this board you *practically* stopped your train? A. Yes, sir."

If he intended to say that he *actually* stopped, he would not have admitted that he *practically* (that is, not *actually*) stopped.

His conduct is illuminated by his conception of his duty as shown by this testimony:

"Q. If you come to that stop board and there is no train on the other side *you have a right to proceed?* A. Yes, sir.

"Q. If there is no train on the crossover track you have a right to proceed? A. Yes, sir."

Of course, in view of the statute requiring him to *stop,* this was not true; it was but an effort ,an excuse, to explain why he had not come to a full stop; practically and admission that he did not do so.

II. It appears beyond controversy that, even if the plaintiff had come to a full stop at the board, he could not at that point have had a clear view of the crossing. His own testimony is that he could not see the crossing until after he had speeded up at the board and gotten within two car lengths of the crossing. As his Honor, Judge Bonham, held:

"The rule of common sense and reason suggests that the statute is complied with if the train is stopped at such distance from the crossing as will enable those in control of it to see that the way is clear and that it is safe to cross."

By his own testimony it is shown that he did not comply with this rule of "common sense and reason."

The statute does not recognize stopping *at the board* as a compliance with his duty; it requires him *"bring the train to a full and complete stop before crossing the said track."* It stands to reason that the company did not erect the board with the expectation that the plaintiff would stop *at the board;* but as a warning that he was approaching a grade crossing of another track and that he must comply with the statute by bringing "the train to a full and complete stop before crossing the said track"; this he manifestly could safely do at any point between the board and the crossing. In view of his own testimony and that of his witness, Mall, it is clear that he did not comply with the statute even if he

actually stopped at the board. Mall testified, and it was practically admitted by the plaintiff, certainly not denied:

"We could not see that crossing until we got to it; we brought the train down to 4 miles at the stop board provided by law."

While it is true that the employees of the Coast Line did not comply with the statute, it appears very clearly that if they had seen the plaintiff's train as it approached the crossing in motion, they hardly would have committed suicide by not stopping.

In *Patterson v. Railroad Co.*, 115 S. C., 390, 105 S. E., 746, the Court held that the plaintiff's violation of the railroad company's rule forbidding him to run a defective engine was a proximate cause, as a matter of law, of a collision between his engine and a train on another track, and constituted, as a matter of law, a good defense to his action for injuries received in such collision.

In that case, the Court held that the engine which he was operating was defective, and that its defective condition was a proximate cause of the injury, and that despite this fact the plaintiff's violation of the rule was also a proximate cause of his injury, without which the accident would not have happened.

The Court said:

"The only reasonable inference from the evidence is that plaintiff wilfully violated the rule which forbade his attempting to run the engine, without the knowledge or acquiescence of defendant and without any reason or excuse for his doing so; and he thereby voluntarily suspended the relation of master and servant between the defendant and himself. We do not mean that he consciously or deliberately intended that his conduct should have that effect, for it may be that the legal consequences of his act were neither actually contemplated nor anticipated by him, but, for cogent reasons, the law gives it that effect."

The Court's decision in the present case is also inconsistent with the decisions in the case of *Smith v. Southern Railway,* 80 S. C., 1, 61, S. E., 205, and *Jarrell v. Railway Co.,* 58 S. C., 491, 36 S. E., 910. In those cases demurrers were sustained to complaints in which the questions of contributory negligence and proximate cause were resolved in favor of the defendants as a matter of law, because no other reasonable inference could be drawn from the allegations of the complaint save that the plaintiff's own contributory negligence was a proximate cause of the injury.

III. The conclusion of the leading opinion is an extreme advance of the rule known as the rule of *"last clear chance."*

The facts of this case do not present a basis for the application of even that rule, for they do not show that the defendants, notwithstanding the negligence of the plaintiff, could by the exercise of due care have avoided the consequences of that negligence. The negligent acts of both parties were concurrent and simultaneous; there was no possibility of either being prior so that the other might have avoided the collision.

That rule, adopted by some Courts, but expressly repudiated by this Court, as I understand it, is that where it is shown that the injured party was guilty of an act of negligence which contributed as a proximate cause to the injury, and it is also shown that the defendant was guilty of a similar act of negligence *which supervened the act of the injured party,* under circumstances which showed that the defendant could reasonably have avoided the negligent act of the injured party, the plaintiff may recover.

As stated, this Court has repudiated the rule of "last clear chance." In the case of *Spillers v. Griffin,* 109 S. C., 78, 95 S. E., 133, L. R. A., 1918D, 1193, this Court held as follows: "His Honor charged that, even though the plaintiff was negligent, yet if the defendant's servant saw the plaintiff in time to avoid the collision, the plaintiff might

still recover. That is the doctrine of 'the last clear chance,' and is not the law in this State."

This Court reversed the lower Court in that case, on that ground.

*The opinion goes further even than the rule of "last clear chance,"* and holds that even if the plaintiff was negligent, the evidence shows that the defendants also were negligent and that that presented an issue for the jury as to whose act was the proximate cause of the collision, when the evidence is absolutely conclusive that the negligence of each was *a* proximate cause.

As I endeavored in my dissenting opinion to show, *the* proximate cause of an injury may be *a* proximate cause of the defendant, concurring with *a* proximate cause of the plaintiff; an ideal situation for the application of the doctrine of contributory negligence.

It seems to me that there can be no possible room to doubt that the plaintiff was guilty of negligence, the violation of a statute, which is not only declared negligence *per se,* but under the *McBride case,* at least *a* proximate cause of the collision. It is conceded that the defendants were guilty of a similar act. The conclusion is inevitable that the plaintiff should not be entitled to recover.

The opinion is opposed to the unbroken line of authorities in this State and elsewhere that, when the plaintiff is shown to have been guilty of an act of negligence which contributed as a proximate cause to his injury, which was the result of the defendant's negligence also, he is not entitled to recover damages on account thereof. To hold otherwise is a denial of the equal protection of the law, and a denial of the due process of the law; both of which are protected by the Federal and State Constitutions.